**UNITED STATES of America, Plaintiff, Appellee,**

v.

**William V. HADDON et al., Defendants, Appellants.**

**No. 76–1371.**

United States Court of Appeals, First Circuit.

Argued Dec. 6, 1976.

Decided March 2, 1977.

John S. Leonard, Boston, Mass., with whom George A. McLaughlin, Sr., John Yagjian, and McLaughlin Brothers, Boston, Mass., were on brief, for defendants-appellants.

Dorothy R. Burakreis, Atty., Dept. of Justice, with whom Peter R. Taft, Asst.

Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., Kenneth P. Nasif, Asst. U. S. Atty., Boston, Mass., Raymond N. Zagone, and Dirk D. Snel, Atty., Dept. of Justice, Washington, D. C., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, and ALD-RICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The United States brought this action to quiet title to two tracts of land in Nantucket, amounting to some 25 acres, which it had acquired through condemnation proceedings commenced in 1948. Appellants claimed title to the land by virtue of two instruments executed by the Treasurer of the Town of Nantucket in March, 1965, assigning to them a tax title which the Town believed it had acquired four weeks earlier. The district court granted the United States' motion for summary judgment, and defendants appealed.

On February 10, 1948 the United States filed a petition for condemnation in the United States District Court for the District of Massachusetts to acquire fee simple title to property described as follows:

"The lands or interests therein sought to be condemned are shown as Tracts 21 and 22B on a plan entitled 'Civil Aeronautics Administration Federal Airways', dated December 10, 1947 and marked Schedule 'B' attached to Declaration of Taking herewith filed, and more particularly described in Schedule 'A' attached hereto and made a part hereof".

Paragraph six of the petition stated that title to the lands described was "vested in owners unknown". Filed along with the petition was a Declaration of Taking signed by the Secretary of Commerce in accordance with 40 U.S.C. § 258a[1] declaring that

---

1. Section 258a provides that in any condemnation proceeding the United States may file a Declaration of Taking declaring that the subject lands are thereby taken for the use of the United States. The declaration must contain:

"(1) A statement of the authority under which and the public use for which said lands are taken.

(2) A description of the lands taken sufficient for the identification thereof.

(3) A statement of the estate or interest in said lands taken for said public use.

(4) A plan showing the lands taken.

(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken."

the land be taken for immediate public use. Two "schedules" were attached to the declaration: "Schedule B" was a map showing the location of the two tracts, and "Schedule A" read as follows:

"Those tracts or parcels of land situated in the Town of Nantucket, County of Nantucket, Commonwealth of Massachusetts, designated 21 and 22B as shown on blueprint of Drawing No. C–4608 [Schedule B] attached hereto and made a part hereof. Said tracts or parcels contain a total area of approximately 25 acres.

"I estimate the sum of $250.00 to be just compensation for the land above described."

The estimated compensation of $250 was deposited with the court at the same time.

On the day that the United States filed its petition and declaration, the district court entered a judgment that fee simple in the land identified in Schedule A vested in the United States upon the filing of the declaration, that "said land is deemed to be condemned and taken for the United States", that the right to just compensation had vested in the "persons entitled thereto", and that the amount of just compensation and any award would be determined in the condemnation proceeding. *See* note 1, *supra*. The record shows that a copy of the district court's judgment, which did not include the map contained in Schedule B nor the description of land provided in Schedule A, was recorded in the Nantucket Registry of Deeds in May, 1948.

The condemnation proceedings lay dormant for four years until March, 1952, when the United States moved to amend its petition by substituting for the former statement that title to the lands before the taking was vested in "owners unknown" the new statement that title had been vested in "those persons whose names appear in Schedule B attached hereto". The attached Schedule B named two individuals, Richard M. and Henry C. Everett, as trustees under

the will of Henry C. Everett, who had owned land abutting the two tracts, and two public officials, the Tax Collector for Nantucket and the Massachusetts Commissioner of Corporations and Taxation, and there followed under the statement "The following named persons or their spouses, heirs, devisees, distributees, creditors or assigns:" a list with 30 entries—22 named individuals, "heirs" of 7 named individuals, and one "Proprietors". The district court allowed the motion to amend and thereafter ordered each of the parties named in Schedule B to file an appearance or answer if he had any claim for just compensation. It further ordered that notice of the amended petition and of its order to the parties be given to all persons named in Schedule B by publishing a copy of the order of notice in the *Nantucket Inquirer and Mirror* once a week for three successive weeks, by mailing a copy of the order to any of the persons residing outside the Commonwealth, by the United States Marshal personally serving any of the parties found within the District of Massachusetts, and "upon all others by posting conspicuously upon said tract of land".

Two months after the court's order, the Marshal filed a Certificate of Service, stating that he personally served Richard M. and Henry C. Everett, the Nantucket Tax Collector, and the Commissioner of Corporations of the Commonwealth. He also stated that he posted a copy of the order of notice "on land in Nantucket County". With respect to the other 30 persons and "heirs", the Marshal said that he made diligent search for them but "failed to find them or any last and usual place of abode in [his] district." The United States Attorney filed an affidavit indicating that he served notice by publication as ordered. Only Richard Everett entered an appearance, but there is no indication that he took any further action. In October, 1953, the district court issued a final judgment establishing the value of the land at $250, the

Upon the filing of the declaration and deposit of the amount of the estimated compensation, title to the lands vests in the United States, and the right to just compensation vests in the

"persons entitled thereto". Just compensation is thereafter determined and awarded in the condemnation proceeding.

amount initially deposited by the United States, and the condemnation action was closed.

Defendants appear on the scene some twelve years later. On March 2, 1965, the Town of Nantucket acquired tax title to the land, referred to in its records as part of share 21 and all of share 22B, because of the failure of the mythical owner, John Doe, to pay his 1964 taxes. On March 30, 1965, the Treasurer of the Town of Nantucket assigned separate tax titles for each share to defendants for a total price of $47.24. The assignments were recorded with the Registry of Deeds on the same day. Over two-and-one-half years later, the Massachusetts Land Court, on petition of defendants, entered an order foreclosing tax liens on the property. Sometime around 1969, defendants constructed, furnished and occupied a single family dwelling on the premises.

In August, 1970, the Department of Commerce reported to the General Services Administration that the tracts were excess to the Department's needs. GSA inspected the property in February, 1971, and two months later advised defendant Haddon of the Government's ownership of the property and demanded that he remove the dwelling. On May 17, 1971, defendants filed a "Plan" with the Massachusetts Land Court to register title in them as tenants-in-common. There is no indication that the Land Court took any action on defendants' plan, and one year later the United States brought this action to quiet title.

Citing especially *United States v. Chatham*, 323 F.2d 95 (4th Cir. 1963), appellants argue that the United States never acquired title because the district court never acquired *in rem* jurisdiction over the property. The court is said to have lacked jurisdiction because notice of the condemnation proceeding was inadequate to give the true owners of the tracts notice that their land was being taken and, therefore, did not meet the requirements of due process. Appellants say that the United States never made meaningful efforts to locate the owners, and that notice of the court's later, 1952 order was deficient. They challenge the diligence of the Marshal's search for the 30 named individuals and "heirs" named in Schedule B of the 1952 order, inferring a lack of diligence from the Marshal's statement that he searched for these individuals one afternoon beginning at 3:35 p. m. On this point, however, they ignore the Marshal's further statement that he searched for these parties "at other divers times and places". They also suggest that posting of the 1952 order was inadequate, observing that the Marshal stated only that he had posted a copy of the order "on land in Nantucket County" not that he posted "said tracts of land" as ordered. Finally, they argue that publication was deficient since the order which was published referred only to "25 acres of land, more or less, situated in Town of Nantucket", without identifying its location.[2]

In response, the United States relies upon the statutory scheme governing a declaration of taking. Section 258a provides that "title" to condemned property "shall vest in the United States of America" upon the filing of its declaration and the deposit of just compensation, while "the right to just compensation for same shall vest in the persons entitled thereto". The statute makes no provision for notice to the condemnee; it requires only that the declaration itself include a description of the land "sufficient for identification". The United States concludes that title to tracts 21 and 22B vested in the United States in accordance with the district court's judgment on February 10, 1948.

We agree with the United States that the taking was valid and its title good. No Supreme Court precedent has been called to our attention holding that a title acquired under section 258a, "in advance of final judgment in condemnation proceedings" to

---

**2.** A recipient of the notice, besides learning that the Government had taken twenty-five acres somewhere in Nantucket, would have learned the district court docket number, and if extraordinarily diligent or curious could then have visited the federal courthouse in Boston where he would have found the map indicating the geographical situs.

determine just compensation, 40 U.S.C. § 258d, can be defeated by deficiencies in the notice given to the owners in those proceedings. *See United States v. Dow,* 357 U.S. 17, 21–23, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). An owner may contest "the validity of the taking as not being for a purpose authorized", *Catlin v. United States,* 324 U.S. 229, 240–41, 65 S.Ct. 631, 637, 89 L.Ed. 911 (1945), but where the owner is injured only by lack of notice, his remedy would seem to be limited to damages, *see Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

■ We recognize, however, the existence of precedent in another circuit for upsetting the title of the United States acquired by final judgment in condemnation proceedings because of inadequate notice, at least where the owners were easily ascertainable;[3] and as we do not need to do so, we prefer not to decide this case on the broad ground that lack of notice may never be a cause for upsetting title. There are narrower grounds which are equally conclusive. To begin with, appellants' arguments based on inadequate notice and a lack of due process suffer from the fact that appellants were not owners at the time of the taking. It is difficult for them to assert a due process claim that at least in part derives from those who owned the land in 1948, especially where the latters' identity and knowledge at the time remain a complete mystery. *Compare United States v. Chatham,* 323 F.2d 95 (4th Cir. 1963). While appellants' tax title carried forward the previous owners' title, if any, it is questionable to what degree private claims based on defects in notice would pass to a successor in interest. The very existence of such claims would depend on individual circumstances, including the owner's actual knowledge, and could be waived. We are thus left with appellants' own equities stemming from the lack of notice, and these suffer from the difficulty that, whatever its duty to notify the owners at the time of the taking, the United States was without duty

to appellants when they arrived on the scene 17 years later.

■ Even indeed if appellants had standing to raise them, the alleged inadequacies in notice here fall well short of those which have been held to violate due process. The Supreme Court held in *Schroeder v. City of New York, supra,* that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." 371 U.S. at 212–13, 83 S.Ct. at 282. Citing *Schroeder,* the fourth circuit in *United States v. Chatham, supra,* likewise found it "outrageously inexcusable" for the Government to fail to give actual notice to owners whose names and addresses were "easily obtainable". 323 F.2d at 99. Here there is nothing whatever to show that the names and addresses of the owners of tracts 21 and 22B were "known or very easily ascertainable"; the contrary seems likely. And substantial efforts were made in 1952 to notify possible owners and public officials.

It is true that in *Chatham,* the fourth circuit also mentioned the inaccuracy of the description, observing that it would not have warned the true owners that their lands were involved. Here while the Government's notice was not inaccurate or misleading insofar as it went, it was incomplete. Neither the 1948 filing in the Registry of Deeds nor the 1952 order of notice included the Schedule B plan or even a summary description showing where on Nantucket the land was to be found. Thus unless the Tax Collector, who received the order of notice, had picked up the information elsewhere, he would have had to inquire at the federal courthouse in Boston, 100 miles away, to find out where in Nantucket the United States' 25 acres lay. Obviously it is understandable why he failed to realize in 1965 that the land in question belonged to the United States rather than to defaulting private parties of unknown identity.

3. *United States v. Chatham,* 323 F.2d 95 (4th Cir. 1963).

But the fact that his error and that of appellants was understandable, and that the United States contributed to it by providing a thoughtlessly incomplete notice, is not enough to take title away from the Government. The United States acquired title in 1948 when it filed a declaration of taking that met statutory requirements; its failure to provide more complete information to the Tax Collector so that he could thereafter avoid this sort of error cannot divest the United States of its earlier perfected title in favor of the Town's unfortunate assignee. It has been held that even state and local requirements for the recording and indexing of judgments "have no application to federal judgments of condemnation", *Norman Lumber Co. v. United States*, 223 F.2d 868, 871 (4th Cir.), *cert. denied*, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 792 (1955), and any failure of the United States to comply with such recording requirements does not provide a basis for divesting or impairing its title, *id.* at 870–71. As the district court said in that case,

"It is true that it imposes a severe hardship on attorneys undertaking to examine titles, to have to inquire at the office of the Clerk of the United States District Court before he can be sure that there is no condemnation judgment entered there which is not recorded and cross indexed in the county where the land lies, but this inconvenience cannot outweigh the public interest in safeguarding and protecting the property of the United States in accordance with the laws of the United States."

*Id.* at 872. We conclude that the Government's title is valid and is now not subject to attack by appellants.

Appellants argue in the alternative that even if the taking was valid they are entitled to a hearing on damages. There are two problems with this contention. First, their answer to the complaint did not even suggest a claim for damages, and the possibility of a right to damages was raised only once in passing at the summary judgment hearing and not pursued. The more fundamental difficulty in recognizing such an action, however, is that appellants, not be-

ing owners when the land was taken, are not among those "entitled" to just compensation for the taking itself, *see* 40 U.S.C. § 258a. *Compare Schroeder v. City of New York, supra.* No other statutory basis for recovery in damages against the Federal Government having been called to our attention, their claim for damages must fall. *See, e. g., United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

*Affirmed.*