732 F.2d 239
 UNITED STATES of America, Plaintiff, Appellee,
v.
125.2 ACRES OF LAND, More or Less, SITUATED IN the TOWN AND
COUNTY OF NANTUCKET, MASSACHUSETTS, and Owners
Unknown, Defendants, Appellees.
Appeal of Joan FISHER, Executrix of the Estate of Matthew L.
Jaeckle, Appellant.
 No. 83-1835.
 United States Court of Appeals,
First Circuit.
 Argued March 7, 1984.
Decided April 13, 1984.
 
 Andrew J. McElaney, Jr., Boston, Mass., with whom R. Reed Baer, and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellant.
 Joseph J. McGovern, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for the United States of America.
 Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 1
 This is an appeal by Joan Fisher, executrix of the will of Matthew Jaeckle, from an award of compensation for land taken by the United States. The land in question is 26 acres in the Town of Nantucket, Massachusetts. On December 1, 1947, the United States filed a petition for condemnation in the United States District Court for the District of Massachusetts pursuant to 40 U.S.C. Sec. 258a for the purpose of establishing air navigation facilities. The petition described four tracts of land on Nantucket Island totalling 125.2 acres and listed as titleholders "persons unknown." The government deposited $1,252 into court as estimated compensation, and on December 1, 1947, the court entered a judgment vesting fee simple title to the land in the United States. A copy of the judgment was posted on the land.
 
 
 2
 In 1952, the petition was amended to include a list of persons believed to have interests in the four tracts. Included in that list was Matthew Jaeckle, whose address was given as "Nantucket, Massachusetts." The government posted on the land notice of a valuation proceeding and published a similar notice for three consecutive weeks in a local newspaper. The federal marshal reported that after a "diligent search" he had been unable to locate any of the persons listed in the amended petition. A valuation proceeding was held on September 29, 1953, at which the owners of one of the four tracts appeared. Judgment was entered valuing the land at $10 per acre. The proceedings were then stricken from the docket with "leave to reinstate for cause shown upon the application of any interested party."
 
 
 3
 Jaeckle learned of the condemnation in 1967 when he commissioned a survey of his land. On December 19, 1972, Jaeckle filed a petition to reinstate the proceedings, claiming that the notice given in 1952 was inadequate. He contended that the defective notice rendered the taking invalid. In the alternative he requested just compensation for the land. The case lay dormant until 1979, by which time Jaeckle had died. His executrix, Joan Fisher, was substituted as a party defendant. Fisher requested a hearing on Jaeckle's original petition. She also asked that if compensation were awarded in lieu of the land, the value of the land be determined as of the date Jaeckle learned of the taking, 1967, or the date he filed his petition, 1972.
 
 
 4
 The district court determined that Jaeckle was the owner of the 26 acre tract in 1947, but declined to upset the government's title to the land. Instead the court awarded compensation for the value of the land in 1947 at the $10 an acre figure established in the 1953 proceeding, for a total of $260. No valuation hearing was held even though Fisher had filed an affidavit by a local realtor (the "Buckley affidavit") valuing the land at $1,200 in 1947.
 
 
 5
 In this appeal, Fisher challenges both the district court's refusal to upset the government's title and the court's rulings on valuation. We agree with the district court that inadequacies in the notice given in 1952 did not vitiate the government's title, but we remand for further proceedings on the question of just compensation.
 
 The Supreme Court has said:
 
 6
 It cannot be disputed that due process requires that an owner whose property is taken for public use must be given a hearing in determining just compensation. The right to a hearing is meaningless without notice.
 
 
 7
 Walker v. City of Hutchinson, 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956). The question is what type of notice is constitutionally required. In Mullane v. Central Hanover Trust Co., 339 U.S. 306, 319, 70 S.Ct. 652, 660, 94 L.Ed. 865 (1950), the Supreme Court held that published notice is normally inadequate when the intended recipient of such notice "could easily be informed by other means at hand":
 
 
 8
 [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.... It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts.
 
 
 9
 Id. at 315, 70 S.Ct. at 657-658. In the present case, Jaeckle's name was known, and it was also known that he was a resident of Nantucket, Massachusetts. The record contains excerpts from the 1952 Nantucket telephone directory listing Jaeckle's street address and telephone number. Additionally, there is evidence that he had lived in Nantucket for many years and that he and his wife had served in town offices. Notice sent to "Matthew Jaeckle, Nantucket, Massachusetts," could scarcely not have reached him.
 
 
 10
 The ease with which notice could have been mailed to Jaeckle must be contrasted with the actual steps taken by the government. While posting notice on land could be adequate under some circumstances, here one copy of the petition was posted on the 125.2 acres being condemned, apparently on a tract not owned by Jaeckle. Further, the land was undeveloped, thus diminishing the likely effectiveness of the posting. In Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), notice by the city of the acquisition of water rights in a river was published in local newspapers and posted along the banks of the river. The appellant owned a summer house on the river and was listed on the tax rolls as owner. The appellant alleged that she had not seen the posted or published notice. The Supreme Court held under Mullane that the notice was inadequate in view of the feasibility of mailing personal notice:
 
 
 11
 It is true that in addition to publishing in newspapers, the city in the present case did put some signs on trees and poles along the bank of the river. But no such sign was placed anywhere on appellant's property, or ever seen by her. The posting of these signs, therefore, did not constitute the personal notice that the rule enunciated in the Mullane case requires.
 
 
 12
 371 U.S. at 213, 83 S.Ct. at 283. We believe the attempted notice in the present case was similarly defective. Possessed of knowledge of Jaeckle's name and town, and with access via the telephone book to his street address, the government could easily have notified him of the court proceeding by mail or other direct means, such as leaving the notice at his residence, yet it did not do so. Instead, it contented itself with publishing and posting. Due process requires more.[1] Mullane, 339 U.S. at 319-20, 70 S.Ct. at 659-60. See also Mennonite Board of Missions v. Adams, --- U.S. ----, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).
 
 
 13
 The harder issue in this case is not that notice was inadequate but the consequences from this inadequacy. Fisher contends that lack of notice renders the taking void. She relies on the principle that when an interested party fails to appear at a proceeding because of a lack of constitutionally adequate notice, the outcome of the proceeding is not binding on the non-appearing party. New York v. New York, New Haven & Hartford Railroad Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); Smith v. United States, 403 F.2d 448 (7th Cir.1968).
 
 
 14
 Personal notice is not, however, a requirement for an effective declaration of taking. The Declaration of Taking Act, 40 U.S.C. Sec. 258a, bifurcates a condemnation proceeding into a vesting of title in the United States and a subsequent proceeding for compensation:
 
 
 15
 Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein.
 
 
 16
 Title vests in the United States prior to the need to notify owners of the right to compensation:
 
 
 17
 [T]he Taking Act enables the United States to acquire title simply by depositing funds "for or on account" of the just compensation to be awarded the owners, rather than by making payment pursuant to a court order.
 
 
 18
 United States v. Dow, 357 U.S. 17, 23, 78 S.Ct. 1039, 1045, 2 L.Ed.2d 1109 (1958). See also United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1943). The Court has long held that takings in advance of compensation do not violate due process. In Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135 (1919), a landowner sought to enjoin a taking pursuant to a state statute on the ground that no pre-taking hearing on compensation was provided. The Court rebuffed the attack stating,
 
 
 19
 it is well settled by the decisions of this court that where adequate provision is made for the certain payment of the compensation without unreasonable delay the taking does not contravene due process of law in the sense of the Fourteenth Amendment merely because it precedes the ascertainment of what compensation is just.
 
 
 20
 251 U.S. at 62, 40 S.Ct. at 64.
 
 
 21
 The Taking Act provides that a right to compensation vests in the owner of taken land upon payment of the required deposit into court and relieves the government of the burden of paying interest on such deposit. While the failure to notify the owner of the right to such compensation preserves the owner's compensation rights against the passage of time and may necessitate the government paying interest, see infra, such failure does not imbue the owner with the power to vitiate the entire taking. Schroeder v. City of New York, 371 U.S. 208, 211 n. 5, 83 S.Ct. 279, 281 n. 5, 9 L.Ed.2d 255 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 114 n. 3, 77 S.Ct. 200, 201 n. 3, 1 L.Ed.2d 178 (1956); United States v. Haddon, 550 F.2d 677, 681 (1st Cir.1977).
 
 
 22
 Fisher cites United States v. Chatham, 323 F.2d 95 (4th Cir.1963), for the proposition that the United States title can be divested by a showing of inadequate notice of a declaration of taking. In Chatham the Fourth Circuit held that proper notice of a condemnation proceeding had not been given to the land's owners. The court noted that in most cases procedural defects give only an independent action for compensation, but held that no in rem jurisdiction had been acquired in that case. Since the government had not taken actual possession of the condemned land, the published notice had to supply the basis of jurisdiction. But "[t]he published notice was so deficient in its description of the land that it was not only unenlightening, but positively misleading ... [and therefore] cannot be an adequate foundation for an exercise of an in rem jurisdiction over this land." 323 F.2d at 100 (footnote omitted). The court explicitly stated "[w]e need not now consider, therefore, whether the [owners] might have been limited to a claim for compensation if the only procedural defect had been the absence of actual notice." 323 F.2d at 100 (footnote omitted).
 
 
 23
 Chatham is somewhat distinguishable in that the taking was not brought under section 258a. Nonetheless, a section 258a declaration of taking must contain "[a] description of the lands taken sufficient for the identification thereof." Thus, while we do not decide the point, it may be that gross defects in the description of land similar to those in Chatham could defeat a section 258a taking. But there were no such defects in the present case: Fisher has not challenged either the completeness or the accuracy of the description in the government's 1947 petition. The law is clear that the lack of notice alone will provide no ground for divesting the United States of title to the land. Schroeder v. City of New York, 371 U.S. 208, 211 n. 5, 83 S.Ct. 279, 281 n. 5, 9 L.Ed.2d 255 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 114 n. 3, 77 S.Ct. 200, 201 n. 3, 1 L.Ed.2d 178 (1956); United States v. Haddon, 550 F.2d 677, 681 (1st Cir.1977).[2]
 
 
 24
 The judgment in the 1953 compensation proceeding is not, however, binding on Fisher. She is now entitled to assert all such rights or defenses as Jaeckle could have asserted in that proceeding. This would include not only the right to establish a higher valuation but the right to try to upset the United States title if she could show that the taking was for an improper purpose. Title obtained pursuant to a declaration of taking can be challenged at the compensation hearing "as not being for a purpose authorized by the statute under which the main proceeding is brought." Catlin v. United States, 324 U.S. 229, 241, 65 S.Ct. 631, 637, 89 L.Ed. 911 (1945); United States v. Haddon, 550 F.2d 677, 681 (1st Cir.1977); Higginson v. United States, 384 F.2d 504 (6th Cir.1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1034, 19 L.Ed.2d 1137 (1968).
 
 
 25
 We add that, on the present record, we see no basis for any claim that the taking was for an improper purpose. The condemnation here was accomplished under the Civil Aeronautics Act of 1938, which granted the Administrator of the Civil Aeronautics Authority broad power to acquire, establish, maintain and operate air navigation facilities. 52 Stat. 973, 985 (1938). Fisher has not questioned the statutory purpose underlying the taking. The fact that the land has since been declared surplus by the federal government is not relevant because "[a] subsequent abandonment of the original purpose for which land was acquired does not affect the validity of the condemnation." Higginson v. United States, 384 F.2d 504, 507 (6th Cir.1967), cert. denied, 390 U.S. 947, 88 S.Ct. 1034, 19 L.Ed.2d 1137 (1968).[3]
 
 
 26
 The remaining question is the amount of compensation to be awarded Fisher. Since the 1953 valuation proceeding is not binding on Fisher, the district court erred in awarding her the $10 per acre determined in that proceeding. Jaeckle originally requested a hearing on fair market value if his plea for return of the land was denied, and Fisher renewed that request. The Buckley affidavit, which alleges that Jaeckle's 26 acres was worth $1,200 in 1947, clearly raises a sufficient factual dispute to justify a valuation hearing.
 
 
 27
 Fisher argues that the date of valuation should be 1967, 1972 or 1983, the date of the district court's judgment. Her theory is that Jaeckle would have reinvested his award in other land that would have appreciated substantially in value.[4] It is well settled that just compensation under the fifth amendment is fair market value as of the date of the taking. United States v. Reynolds, 397 U.S. 14, 16, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970); United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). When the government condemns land pursuant to the Declaration of Taking Act, the date of taking is the date that the declaration is filed, unless the government has earlier gone into possession. United States v. Dow, 357 U.S. 17, 23, 78 S.Ct. 1039, 1045, 2 L.Ed.2d 1109 (1958); United States v. 161.99 Acres of Land, 512 F.2d 65 (5th Cir.1975). We see no reason to depart from this well-settled rule in the present case. Fisher's claim that Jaeckle would have realized a large gain by investing the compensation in other land is too speculative to justify applying a different rule. See United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 276, 63 S.Ct. 1047, 1053, 87 L.Ed. 1390 (1943). On remand, the district court must determine fair market value of the land as of 1947.
 
 
 28
 The award of compensation must also include interest:
 
 
 29
 Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added.
 
 
 30
 Seaboard Air Line Railroad Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923). Under section 258a just compensation includes:
 
 
 31
 interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court.
 
 
 32
 The exclusion of interest on sums paid into court only applies when such sums are available to the parties in interest. Bishop v. United States, 288 F.2d 525, 528 (5th Cir.1961); United States v. 15.03 Acres of Land, 253 F.2d 698, 699 (2d Cir.1958). The inadequate notice in the present case prevented Jaeckle from taking any action to withdraw his portion of the deposit, $260, from the court until 1967. Fisher is thus entitled to interest on the $260 from December 1, 1947, until the date in 1967 when Jaeckle learned of the taking. Thereafter, Jaeckle could have withdrawn the $260; hence Fisher may not receive interest on that sum after 1967. Fisher may also receive interest on any additional amount which the land is found to be worth on remand, such interest to accrue from December 1, 1947 to the date of actual payment pursuant to final judgment.
 
 
 33
 An issue may also arise as to the rate of interest. In Seaboard Air Line Railroad Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923), the Supreme Court held that an award of seven percent interest on a condemnation award was appropriate despite the absence of an interest provision in the relevant statute. "[N]o specific command to include interest is necessary when interest or its equivalent is a part of such compensation." Id. at 306, 43 S.Ct. at 356. It has been held elsewhere that the six percent interest provided for in the Declaration of Taking Act cannot under the fifth amendment constitute a ceiling, although it constitutes a floor, on the interest recoverable on condemnation awards. United States v. Blankinship, 543 F.2d 1272 (9th Cir.1976); United States v. 319.46 Acres of Land, 508 F.Supp. 288 (W.D.Okla.1981). Upon remand the district court should determine a rate of interest "as will produce the full equivalent of [fair market] value paid contemporaneously with the taking." Seaboard, 261 U.S. at 306, 43 S.Ct. at 356. Such rate may take into account the prevailing rates on long term Treasury Notes at various times and may exceed the six percent statutory rate. Blankinship, 543 F.2d at 1276.
 
 
 34
 Accordingly we reverse and remand to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 While the marshal's affidavit alleges attempted but unsuccessful personal service, there is no evidence of what actual efforts the marshal made to locate Jaeckle. Given Jaeckle's close ties with the small island community, the marshal's efforts could scarcely have been more than perfunctory. In any event, the marshal's negative return is insufficient evidence that "a reliable means of acquainting parties that their rights are before the courts" was adopted. See Mullane v. Central Hanover Trust Co., 339 U.S. at 315, 70 S.Ct. at 658
 
 
 [2]
 Similarly Fisher's contention that the lack of notice violated Jaeckle's liberty interest in being free from arbitrary governmental action, thus mandating return of the land, is without merit
 
 
 [3]
 This is not to say that Fisher is foreclosed from attempting to prove that the government's taking was for an improper purpose at the forthcoming valuation proceeding, infra, provided she can adduce evidence placing these matters in a new and different light
 
 
 [4]
 Fisher alleges that the 26 acres are now worth over $300,000