**Daniel WOOD, et al.**

v.

**CITY OF EAST PROVIDENCE, et al.**

No. 83–613–Appeal.

Supreme Court of Rhode Island.
Jan. 22, 1986.

Norman L. Grant, Pawtucket, for plaintiff.

Peter A. Clarkin, Iannuccillo & Hines, Inc., Bruce A. Wolpert, Hines Patz & Wolpert, Inc., Orlando Andreoni, Providence, for defendants.

OPINION

BEVILACQUA, Chief Justice.

The United States District Court for the District of Rhode Island has certified the following questions of law concerning article XVII of the amendments to the Rhode Island Constitution permitting the purchase of real estate originally taken by condemnation pursuant to G.L. 1956 (1981 Reenactment) § § 16–9–5 through 16–9–8 and P.L. 1961, ch. 64.

"1.   Under the facts found by the United States District Court and agreed upon by the parties, what effect did the plaintiffs' signing of the statutory form of quitclaim deed on August 29, 1968, have on their rights of preemption under Article XVII of the Amendments to the Rhode Island Constitution?"

"2.   Under the facts found by the United States District Court and agreed upon by the parties, does Article XVII of the Amendments to the Rhode Island Constitution grant to the plaintiffs the first right to purchase property that was taken from them by eminent domain for school purposes pursuant to G.L. 1956 (1981 Reenactment) § 16–9–5 through 16–9–8 and pursuant to Chapter 64 of the Public Laws of Rhode Island (1961)?"

"3. Under the facts found by the United States District Court and agreed upon by the parties, does the taking of the plaintiffs' property by eminent domain for school purposes, pursuant to G.L. 1956 (1981 Reenactment) § 16–9–5 through 16–9–8 and pursuant to Chapter 64 of the Public Laws of Rhode Island (1961), without subsequent use of the property for school purposes or any other purposes from August 8, 1967 to May 1979, constitute an abandonment by the condemnor?"

This is a civil action in which plaintiffs are seeking to exercise their preemptive rights under art. XVII of the amendments of the Rhode Island Constitution in regard to real estate taken from them originally by condemnation and confirmed by quitclaim deed.

The pertinent facts are as follows. On August 29, 1968, plaintiff Daniel Wood conveyed all his interest and plaintiff Barbara Wood released her dower interest in 8.52 acres of land located in East Providence by quitclaim deed to the city of East Providence. This transaction was prompted by a resolution of the city of East Providence on June 27, 1967, condemning plaintiffs' property for school purposes pursuant to § § 16–9–5 through 16–9–8 and P.L. 1961, ch. 64. The defendant city of East Providence issued a check payable to plaintiff Daniel Wood in the amount of $27,175.14, of which $25,560 was the agreed-upon purchase price and the remainder constituted interest thereon. The defendant city of East Providence, however, never used the property for school purposes, or for any other purpose, and the property remains vacant to this date.

The Wampanoag School Site, as the property has come to be called, was later turned over by the East Providence School Committee to the city council for public sale on October 9, 1979. The plaintiffs, through their attorney, wrote to the city council on October 16, 1979, and again on May 16, 1980, offering to repurchase the condemned property. The defendant city of East Providence, however, relying upon the quitclaim deed executed by plaintiffs on August 29, 1968, considered the acquisition of plaintiffs' condemned property as if it were a voluntary purchase and not a purchase by condemnation. Accordingly, the city decided to advertise publicly the sale of the Wampanoag School Site, which consisted of plaintiffs' 8.52 acres of condemned land plus other parcels, making a total of 10.29 acres. After receiving a number of bids, the East Providence City Council accepted the offer from Carpionato Corporation and set the sale price for the site at $257,250. However, the trial judge determined that the questions required an interpretation of Rhode Island law and thereupon certified the issues to this court.

Since the answer to the second certified question is dispositive of the first, the second question will be addressed first.

"Does Article XVII of the Amendments to the Rhode Island Constitution grant to the plaintiffs the first right to purchase property that was taken from them by eminent domain for school purposes pursuant to G.L. 1956 (1981 Reenactment) § 16–9–5 through 16–9–8 and pursuant to Chapter 64 of the Public Laws of Rhode Island (1961)?"

The plaintiffs argue that the taking of their property for school purposes by condemnation was a taking to establish a "public * * * place or park" and thus comes within the paramaters of art. XVII of the amendments to the Rhode Island Constitution, which states:

"1. Acquisition of excess land by public agencies.—The general assembly may authorize the acquiring or taking in fee by the state, or by any cities or towns, of more land and property than is needed for actual construction *in the establishing, laying out, widening, extending or relocating of public highways, streets, places, parks or parkways*; provided, however, that the additional land and property so authorized to be acquired or taken shall be no more in extent than would be sufficient to form suitable

building sites *abutting on such public highway, street, place, park or parkway.* After so much of the land and property has been appropriated for such public highway, street, place, park or parkway as is needed therefor, the remainder may be held and improved for any public purpose or purposes, or may be sold or leased for value with or without suitable restrictions, and in case of any such sale or lease, *the person or persons from whom such remainder was taken shall have the first right to purchase or lease the same upon such terms as the state or city or town is willing to sell or lease the same."* (Emphasis added.)

█ This court has made it clear, however, in construing the language of art. XVII that such a right to repurchase extends only to individuals whose land has been taken or purchased for highway purposes. *See Lapre v. Flanders,* —— R.I. ——, 465 A.2d 214 (1983); *Griffin v. Bendick,* —— R.I. ——, 463 A.2d 1340 (1983). In these cases we examined the text of art. XVII as well as its history and concluded that the word "place" refers to "a court or square or short street." *Id.* at ——, 463 A.2d at 1347. It is our opinion, therefore, that plaintiffs have no preemptive rights under art. XVII since the property was taken by condemnation for school purposes and not for highway purposes.

"What effect did the plaintiffs' signing of the statutory form of quitclaim deed on August 29, 1968, have on their rights of preemption under Article XVII of the Amendments to the Rhode Island Constitution?"

Having already determined that plaintiffs have no preemptive rights on which to base their claim, the effect of the transfer of the property to the city of East Providence by quitclaim deed was conclusive. The quitclaim deed signed by plaintiffs effectively conveyed all of their interest in the property and contained no express limitations on the land conveyed. *See Babcock v. Wells,* 25 R.I. 23, 28, 54 A. 596, 598 (1903). Our statutes pertaining to quitclaim deeds indicate that "absent specific mention of an excepted or reserved right or interest, the conveyance passes all rights, including future interests appertaining to the land." *Lapre v. Flanders,* —— R.I. at ——, 465 A.2d at 216; G.L. 1956 (1984 Reenactment) § § 34–11–4, 34–11–17, 34–11–18, 34–11–28, and 34–4–11. Therefore, plaintiffs have no remaining interest in the condemned property upon which to assert their claim.

"Does the taking of the plaintiffs' property by eminent domain for school purposes, pursuant to G.L. 1956 (1981 Reenactment) § 16–9–5 through 16–9–8 and pursuant to Chapter 64 of the Public Laws of Rhode Island (1961), without subsequent use of the property for school purposes or any other purposes from August 8, 1967 to May, 1979 constitute an abandonment by the condemnor?"

The issue of abandonment of a municipality's rights in property acquired by condemnation has never been decided by this court. The issue has arisen only in the context of zoning disputes where real estate purchasers seek to benefit from legally nonconforming uses that previously existed in the property but have since been discontinued for more than the prescribed time allowed under the zoning ordinance. *See Town of East Greenwich v. Day,* 119 R.I. 1, 375 A.2d 953 (1977); *A.T. & G., Inc. v. Zoning Board of Review of North Smithfield,* 113 R.I. 458, 322 A.2d 294 (1974). In *Day* this court held that abandonment of a use in property requires an intention to abandon plus some overt act. *Town of East Greenwich v. Day,* 119 R.I. at 7, 375 A.2d at 956. Likewise, abandonment of rights in property taken by eminent domain requires the same two elements beyond mere nonuse. 30 C.J.S. *Eminent Domain* § 458 (1965).

The plaintiffs argue that the city of East Providence abandoned the condemned property by offering it for public sale. Contrary to plaintiffs' belief, however defend-

ant did not abandon the property that was originally taken for school purposes; rather the property became unsuitable for school purposes, and the East Providence City Council exercised its right to sell the property under G.L. 1956 (1980 Reenactment) § 45–2–5, which provides:

"In addition to the powers heretofore granted by charter or the public laws of the state with respect to the purchase and sale of land, *the city council* of any city and the town council of any town, if it shall see fit so to do, *is hereby authorized*, from time to time, *to sell, lease, convey* or use for any other public or municipal purpose or purposes, or for any purpose whatsoever, *any lands or properties owned by said city or town, which have been purchased, acquired, used or dedicated in any manner for municipal or other public purposes, whenever, in the opinion of said city council or town council, said lands or properties have become unsuitable or have ceased to be used for such purposes.*" (Emphasis added.)

■ The defendants' selling of the condemned property is further supported by *Buckhout v. City of Newport,* 68 R.I. 280, 287, 27 A.2d 317, 321 (1942), where this court stated in dicta that "where land has been purchased for a public use but has never been actually devoted thereto, the municipality may dispose of it for an adequate consideration under its general power of alienation." Unlike in *Buckhout,* where the municipality had no statutory authority in which to transfer the property, here the city council acted pursuant to a statute that specifically allows for the selling of property that has become unsuitable for the purposes for which it was acquired. Moreover, the trial judge determined that the surrounding neighborhood had undergone significant changes since the time of the condemnation, thereby rendering the condemned property no longer suitable for school purposes. Therefore, the East Providence City Council properly offered the condemned property for public sale pursuant to § 45–2–5 since the land had become unsuitable for school purposes and was not abandoned.

For the reasons stated herein, we answer all the questions certified to us in the negative and order the papers in the case returned to the United States District Court with our decision endorsed thereon.