Daniel H. WOOD and Barbara H.
Wood, Plaintiffs, Appellants,

v.

CITY OF EAST PROVIDENCE, et al.,
Defendants, Appellees.

No. 86–1512.

United States Court of Appeals,
First Circuit.

Argued Dec. 4, 1986.
Decided Feb. 12, 1987.

Norman L. Grant, Pawtucket, R.I., for
plaintiffs, appellants.

Hugh L. Moore, Jr., Providence, R.I., for
defendants, appellees.

Before BOWNES, BREYER and
TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

This appeal concerns alleged constitutional violations by a Rhode Island municipality of a landowner's right under state law to repurchase property taken for school purposes which was not so used and was subsequently sold by the municipality to a private developer. Plaintiffs-appellants, Daniel and Barbara Wood, owned 8.52 acres of land that were condemned in 1967 by the School Committee of the City of East Providence so that a school could be constructed on the premises. In August 1967, the Woods received $27,175 as fair market value compensation for the taking. At the request of the City, and without the advice of counsel, the Woods executed a quitclaim deed to the premises, believing

that title could not be conveyed without the deed.

The proposed school was never built because changing neighborhood conditions rendered the property unsuitable for school purposes. Thus, pursuant to Rhode Island law, the land was transferred in 1979 from the East Providence School Committee to the city council, to be offered for public sale.[1] Shortly after this transfer, the Woods notified the City of their wish to repurchase the condemned property. Believing that the Woods had no right to repurchase the property, the City offered it for public sale. On November 26, 1980, the city council voted to sell the property for $257,250 to a private developer who intended to construct an office complex on the site.

The Woods had filed suit on July 2, 1980, against the City in the United States District Court for the District of Rhode Island. The complaint alleged claims under 42 U.S.C. § 1983 and the fifth and fourteenth amendments to the United States Constitution. The district court held that the federal constitutional issues could not be decided until a number of state law questions were resolved. Accordingly, it certified three issues to the Rhode Island Supreme Court: (1) whether Article XVII of the Amend-

ments to the Rhode Island Constitution granted the Woods a preemptive right to repurchase the property that was taken from them for school purposes; (2) the effect of the quitclaim deed executed by the Woods; and (3) whether the City's failure to utilize the property for school or other purposes between 1967 and 1979 constituted an abandonment of the premises.

The Rhode Island Supreme Court determined that article XVII of the state constitution did not afford the Woods a right to repurchase the condemned property.[2] *Wood v. City of East Providence*, 504 A.2d 441, 443 (R.I.1986). The court stated that Rhode Island only grants former owners of land taken for highway purposes, a right to repurchase their property if it is unused by the state. School condemnees enjoy no such right of repurchase. *Id.* The court also ruled that the quitclaim deed executed by the Woods conveyed all of their interest in the land. Therefore, the Woods had "no remaining interest in the condemned property" that could serve as a basis for their claim. *Id.* Finally, the Rhode Island Supreme Court held that the City did not abandon the condemned property but, instead, properly followed a state statute permitting the sale of land which has be-

1. Section 45-2-5 of Rhode Island General Laws provides:

> 45-2-5. Power to use, lease, or dispose of property no longer needed.—In addition to the powers heretofore granted by charter or the public laws of the state with respect to the purchase and sale of land, the city council of any city and the town council of any town, if it shall see fit so to do, is hereby authorized, from time to time, to sell, lease, convey or use for any other public or municipal purpose or purposes, or for any purpose whatsoever, any lands or properties owned by said city or town, which have been purchased, acquired, used or dedicated in any manner for municipal or other public purposes, whenever, in the opinion of said city council or town council, said lands or properties have become unsuitable or have ceased to be used for such purposes.

2. Article XVII of the Amendments to the Rhode Island Constitution states:

> ARTICLE XVII
>
> § 1. Acquisition of excess land by public agencies.—The general assembly may authorize the acquiring or taking in fee by the state,

or by any cities or towns, of more land and property than is needed for actual construction in the establishing, laying out, widening, extending or relocating of public highways, streets, places, parks or parkways; provided, however, that the additional land and property so authorized to be acquired or taken shall be no more in extent than would be sufficient to form suitable building sites abutting on such public highway, street, place, park or parkway. After so much of the land and property has been appropriated for such public highway, street, place, park or parkway as is needed therefor, the remainder may be held and improved for any public purpose or purposes, or may be sold or leased for value with or without suitable restrictions, and in case of any such sale or lease, the person or persons from whom such remainder was taken shall have the first right to purchase or lease the same upon such terms as the state or city or town is willing to sell or lease the same. R.I.Gen. Laws, Amend. Art. 17, § 1 (1976).

come unsuitable for the purposes for which it was taken.

Following the Rhode Island Supreme Court's resolution of the certified issues, the case was returned to the District Court of Rhode Island. The Woods argued that the failure to afford school condemnees the same right of repurchase as highway condemnees, denied them their constitutional rights of equal protection and due process. The Woods also asserted that it was unconstitutional to uphold a quitclaim deed executed under the mistaken impression that it was needed to convey title, since such a mistake amounted to an unknowing waiver of their alleged right to repurchase the property. Finally, they reasserted to the district court their claim that the City had abandoned the property. The district court denied the Woods relief on all three grounds. This appeal followed.

## I.

■ We consider first appellants' claim that the City abandoned the condemned property. The abandonment of rights in property taken by eminent domain requires an intention to abandon plus some overt act of abandonment. *Wood v. City of East Providence*, 504 A.2d at 443; *Town of East Greenwich v. Day*, 119 R.I. 1, 375 A.2d 953, 956 (1977). The Woods correctly observe that the City's failure to construct a school on the property "indicates an abandonment of the condemned purposes." The abandonment of the condemnatory purpose does not, however, constitute an abandonment of the property; nor does it invalidate the original taking.[3] "[A] subsequent abandonment of the original purpose for which land was acquired does not affect the validity of the condemnation." *United States v. 125.2 Acres of Land*, 732 F.2d 239, 243 (1st Cir.1984); *Higginson v. Unit-*

*ed States*, 384 F.2d 504, 507 (6th Cir.1967), *cert. denied*, 390 U.S. 947, 88 S.Ct. 1034, 19 L.Ed.2d 1137 (1968).

■ Since the validity of the taking here is not vitiated by the abandonment of the original condemnatory purpose, the City remains the valid owner of the premises. Accordingly, it correctly relied upon R.I. Gen Laws § 45–2–5, which permits a city or town to sell condemned land which has become unsuitable for its intended public purpose. Thus, while the City's decision to proceed under § 45–2–5 does manifest an intent to abandon the original condemnatory purpose, it does not demonstrate an intent to abandon the property itself. Indeed, it demonstrates just the opposite. The City's effort to sell the property in order to obtain the proceeds therefrom, evidenced its intent to make use of the land in a manner prescribed by Rhode Island law. *Wood v. City of East Providence*, 504 A.2d at 443–44.

## II.

The Woods argue that the Rhode Island Supreme Court's construction of Article XVII of the Amendments to the Rhode Island Constitution violates the equal protection clause of the fourteenth amendment. They contend that it is unconstitutional for Rhode Island to deny school condemnees a right of repurchase enjoyed by highway condemnees.

We note initially our doubts as to whether the Woods are situated similarly to the class of condemnees who enjoy a right of repurchase under article XVII. By its own terms, article XVII applies to the "[a]cquisition of excess land by public agencies." The land taken from the Woods was not *in excess* of the amount of property necessary to achieve the purpose of the condemnation. Rather, the land has been deemed

---

**3.** The Woods do not dispute the validity of the original taking. We do not think that an abandonment of the original condemnatory purpose, by itself, necessitates any reexamination of the validity of the taking, even in a case such as this, where both the City and a private party benefit greatly from the abrogation of the original purpose. If, however, a condemnee can adduce some evidence of impropriety, then an abandonment of the original condemnatory purpose would be of greater significance. Such facts would warrant greater scrutiny of the validity and purpose of the taking, as well as the propriety of the governmental entity's conduct in abandoning the condemnatory purpose.

*wholly unsuitable* for fulfilling that purpose.

■ Even accepting the contention that condemnees whose land is in excess of that needed for the state's condemnatory purpose are situated similarly with condemnees whose land becomes unsuitable for the condemnatory purpose, the state's differential treatment of highway condemnees and school condemnees does not violate the equal protection clause. A state's exercise of its eminent domain power is constitutional unless that power is wielded for an illegitimate purpose or in an irrational manner. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241–43, 104 S.Ct. 2321, 2329–31, 81 L.Ed.2d 186 (1984); *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). We do not think it is irrational for Rhode Island to grant highway condemnees a right of repurchase that is unavailable to school condemnees. Article XVII was enacted in 1914, in response to significant constraints imposed on highway construction by virtue of the operation of the common law:

> The amendment was promulgated at a time in which literal and very restrictive meanings were given to the phrase "public use." ... Such restrictive readings were giving rise to claims for damages from construction activities incidental to the building of highways and railroads. For instance, a town or its agents could be found guilty of trespass during the reconstruction of a road if there was an entry upon the lands of an adjacent property owner.... Construction activities were consequently confined to the roadbed, thereby hampering efficient roadbuilding methods. In reaction to these restraints, the Legislature in 1914 drafted Article XVII.

*Griffin v. Bendick*, 463 A.2d 1340, 1347–48 (R.I.1983) (citations omitted). Thus, there is an historic and rational basis for affording highway condemnees a right of repurchase. Road construction necessitated the taking of excess land whose retention by the state would be unnecessary once the highway was completed. By offering a

right of repurchase to highway condemnees, article XVII struck a balance between the imperatives of road construction and the rights of landowners. There is no indication that the exigencies of school construction raises similar problems with respect to the rights of adjacent property owners. Accordingly, there is no historic or practical necessity for extending the right of repurchase to school condemnees. We hold, therefore, that the different treatment of school condemnees and highway condemnees has a rational basis, and does not violate the equal protection clause.

### III.

■ Rhode Island law provides that when a city condemns land for school purposes, title in fee simple vests in the city once the school committee files a description and plat of the land, and a statement that the property is being taken in accordance with the applicable state law provisions. R.I.Gen. Laws § 16–9–6 (1981). Thus, the City obtained a fee simple interest in the land by operation of law once it filed the requisite description, plat and statement. Because the City obtained a fee simple interest in the land, and because appellants retain no right of repurchase in the property, the issue of the effect of the quitclaim deed executed by the Woods is immaterial. Appellants possess no rights in the property which would be revived by the invalidation of the quitclaim deed. We also note that, although the district court found that the Woods signed the deed under a mistaken belief that it was necessary to convey title, the court also found "no evidence of unlawful duress or unfair dealing which might indicate a procedural irregularity let alone a due process constitutional violation."

*Affirmed.*