**Supreme Court**

No. 2014-235-Appeal.
(PC 13-618)

Estate of Richard J. Deeble          :

v.          :

Rhode Island Department of          :
    Transportation.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| Estate of Richard J. Deeble | : |
| | |
| v. | : |
| | |
| Rhode Island Department of Transportation. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on January 21, 2016, after a justice of the Superior Court entered a judgment in favor of the defendant, the Rhode Island Department of Transportation (RIDOT). The plaintiff, the Estate of Richard J. Deeble (plaintiff or estate), appealed the trial justice's determination that the estate is not entitled to a right of first refusal to repurchase land condemned for highway purposes under article 6, section 19 of the Rhode Island Constitution. On appeal, the plaintiff contends that the trial justice erred in failing to conclude that the preemptive right passed to the estate of the original condemnee, Richard J. Deeble (Richard),[1] upon his death. After careful consideration of the parties' arguments, we affirm the judgment of the Superior Court.

**Facts and Travel**

The facts underlying this action are not in dispute. In January 2001, RIDOT acquired a 31,502-square-foot parcel of real property located at 480 Benefit Street in Providence, Rhode Island (condemned property) through eminent domain in connection with the relocation of

---

[1] To distinguish Richard Deeble from his wife, Virginia, we refer to the Deebles by their first names. We intend no disrespect.

Interstate Route 195. At the time of the acquisition, the condemned property was owned by Richard and his wife, Virginia (the Deebles), as tenants by the entirety. Virginia passed away on April 16, 2006. Richard died three years later, on July 7, 2009, and his will was admitted to probate in Coventry, Rhode Island.

RIDOT utilized a portion of the condemned property in furtherance of the relocation of Interstate Route 195. Upon completion of the project, approximately 24,601 square feet of the condemned property remained (surplus property). However, in accordance with G.L. 1956 § 37-5-8(b), RIDOT was "directed, authorized[,] and empowered to sell, transfer[,] and convey" the surplus property to the State of Rhode Island I-195 Redevelopment District Commission.[2]

On February 5, 2013, plaintiff sought declaratory and injunctive relief against RIDOT in the Providence County Superior Court, asserting that, should RIDOT seek to sell or lease the condemned property, the estate must be offered the opportunity to repurchase or lease the land in accordance with article 6, section 19 of the Rhode Island Constitution. The estate contended that, when Richard died, the right of first refusal that was vested in him by virtue of article 6, section 19 passed to his heirs, successors, and assigns. RIDOT countered that the preemptive right was personal to Richard and died with him. On April 26, 2013, the parties entered into a consent order, in which RIDOT agreed to refrain from selling or encumbering the surplus property pending resolution of this litigation.

On June 16, 2014, the Superior Court justice issued a written opinion in which he found that the clear and unambiguous language of article 6, section 19 restricted rights set forth in the provision to the original condemnee. Consequently, the Superior Court justice held that the

---

[2] The State of Rhode Island I-195 Redevelopment District Commission "oversee[s], plan[s], implement[s], and administer[s] the development" of surplus land made available as a result of the relocation of Interstate Route 195. G.L. 1956 § 42-64.14-5(b); see also G.L. 1956 § 37-5-8(a); § 42-64.14-2(a).

provisions of article 6, section 19 did not pass to the estate. A judgment entered on July 1, 2014, and the estate filed this timely appeal.

## Standard of Review

This Court applies a deferential standard of review in passing on the grant or denial of declaratory relief. See Town of North Kingstown v. International Association of Firefighters, Local 1651 AFL-CIO, 107 A.3d 304, 312 (R.I. 2015). The decision will withstand appellate review "unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law." Id. (quoting Hagenberg v. Avedisian, 879 A.2d 436, 441 (R.I. 2005)). However, this Court considers questions of constitutional construction on a de novo basis. State v. Matthews, 88 A.3d 375, 384 (R.I. 2014).

## Analysis

In this case of first impression, we are called upon to decide whether the rights set forth in article 6, section 19 of the Rhode Island Constitution terminate upon the death of the original condemnee. Article 6, section 19 reads:

> "The general assembly may authorize the acquiring or taking in fee by the state, or by any cities or towns, of more land and property than is needed for actual construction in the establishing, laying out, widening, extending or relocating of public highways, streets, places, parks or parkways; provided, however, that the additional land and property so authorized to be acquired or taken shall be no more in extent than would be sufficient to form suitable building sites abutting on such public highway, street, place, park or parkway. After so much of the land and property has been appropriated for such public highway, street, place, park or parkway as is needed therefor, the remainder may be held and improved for any public purpose or purposes, or may be sold or leased for value with or without suitable restrictions, and in case of any such sale or lease, the person or persons from whom such remainder was taken shall have the first right to purchase or lease the same upon such terms as the state or city or town is willing to sell or lease the same." (Emphasis added.)

- 3 -

Our focus in this case centers on the phrase "the person or persons from whom such remainder was taken" and requires us to determine whether article 6, section 19 may encompass the heirs, successors, and assigns of the condemnee after his or her death.

When words within a constitutional provision are clear and unambiguous, this Court will not look beyond their "plain, ordinary, and usually accepted meaning." Woonsocket School Committee v. Chafee, 89 A.3d 778, 788 (R.I. 2014) (quoting Viveiros v. Town of Middletown, 973 A.2d 607, 610 (R.I. 2009)). Words are clear and unambiguous if, read within the context in which they appear, they give rise to but a single rational interpretation. Cf. State v. Hazard, 68 A.3d 479, 485 (R.I. 2013) ("[A]mbiguity exists when a word or phrase in a statute is susceptible of more than one reasonable meaning." (quoting Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island, 31 A.3d 1263, 1269 (R.I. 2011))); Andrukiewicz v. Andrukiewicz, 860 A.2d 235, 238 (R.I. 2004) ("[A] contract is ambiguous if it is reasonably susceptible of different constructions." (quoting Flynn v. Flynn, 615 A.2d 119, 121 (R.I. 1992))). So long as the plain language of a constitutional provision lacks ambiguity and does not lend itself to an "absurd result," this Court need not assume the arduous task of delving into the thought processes of the legislators who drafted the amendment or the voters who enacted it. McKenna v. Williams, 874 A.2d 217, 232 (R.I. 2005).

"In construing a constitutional provision, this [C]ourt properly consults extrinsic sources, including the proceedings of constitutional conventions and any legislation related to the constitutional provision that was enacted at or near the time of the adoption of the constitutional amendment." City of Pawtucket v. Sundlun, 662 A.2d 40, 45 (R.I. 1995). The Court "must look to the history of the times and examine the state of affairs as they existed when the constitution was framed and adopted." Id.

Article 6, section 19 has been with us for a century and harkens back to a period when vehicles and the highways over which they traveled were markedly different. The amendment traces its origins to a time when the law so narrowly interpreted the term "public use" that municipalities were liable in trespass if, in the course of constructing a highway or railroad, its agents caused entry upon the property of an abutting landowner. Griffin v. Bendick, 463 A.2d 1340, 1347-48 (R.I. 1983). To avoid liability, public-works activities were restricted to the roadbed, a practice that impeded the quality and efficiency of the construction process. Id. at 1348. To resolve the issue, the General Assembly proposed a constitutional amendment that is now article 6, section 19 of the Rhode Island Constitution,[3] Griffin, 463 A.2d at 1348, which the Rhode Island electorate adopted in 1916 by a margin of 31,709 to 6,786.[4] The constitutional provision thus allowed public agencies to seize, by eminent domain, surplus land necessary for purposes of construction but excess upon completion of the project. See Wood v. City of East Providence, 811 F.2d 677, 680 (1st Cir. 1987) (citing Griffin, 463 A.2d at 1347-48). Once the land was no longer needed, the property owner at the time of the condemnation had the constitutionally-protected right to repurchase or lease any remaining land in accordance with article 6, section 19. Wood, 811 F.2d at 680.

This Court has previously had the occasion to interpret the meaning of the term "place" within article 6, section 19. See Wood v. City of East Providence, 504 A.2d 441, 443 (R.I. 1986); Lapre v. Flanders, 465 A.2d 214, 216 (R.I. 1983); Griffin, 463 A.2d at 1347-48. In

---

[3] The provision originally was added to the Rhode Island Constitution by Article of Amendment XVII in 1916. Annotated Constitution of the State of Rhode Island and Providence Plantations, 24 (Helin State Law Library 1988), available at http://helindigitalcommons.org/lawarchive/26. It became article 6, section 19 following the 1986 Constitutional Convention, although the text itself remained unaltered. See id. at 23-24.

[4] Annotated Constitution of the State of Rhode Island and Providence Plantations, 24.

<u>Griffin</u>, 463 A.2d at 1347, we were faced with the question of whether a port facility qualified as a "place" in the context of the application of article 6, section 19 to "public highways, streets, places, parks or parkways." We held that it did not, and we narrowly construed the term to signify "a court or square or short street." <u>Griffin</u>, 463 A.2d at 1347. We concluded that the General Assembly, "if it had so desired, could have expressly included a reference to port facilities in the language of the amendment," and that such omission "consequently evidences an intent not to include such facilities within its ambit." <u>Id.</u> at 1348. Subsequently, we have held that the term "place" does not encompass an airport, <u>Lapre</u>, 465 A.2d at 216, or a school, <u>Wood</u>, 504 A.2d at 443.

We turn to the language of article 6, section 19 that is the subject of the present dispute— "the person or persons from whom such remainder was taken." The estate argues that this language merely identifies those in whom the preemptive right is vested and that, by its plain and ordinary meaning, should not be construed as terminating upon the death of the original condemnee. We disagree. Had the General Assembly intended for the right of first refusal to transcend the death of the original condemnee, it would have expressly included such language within article 6, section 19. It did not. The contention that the right is vested not only in "the person or persons from whom such remainder was taken" but also in their heirs, successors, and assigns is inconsistent with the plain language of the provision. To hold otherwise would add language to the constitution, an exercise in which we will not engage.

The estate argues that the predecessor to article 6, section 19 would not have passed with "such widespread support from voters * * * if the General Assembly intended, and the voters understood," that the right of first refusal would be extinguished upon the death of the original condemnee. As we previously have stated, "[w]hat matters in the end is what the amendment

says." McKenna, 874 A.2d at 232 n.14. Here, article 6, section 19 simply does not include language that the right of first refusal passes to the heirs, successors, and assigns of the original condemnee upon death. Since the Deebles were the owners of the property at the time of the taking, only they had the power to exercise the preemptive right. When the Deebles died, the right of first refusal under article 6, section 19 was extinguished.

Since this Court is satisfied that the plain language of article 6, section 19 is unambiguous, we need not address the estate's alternative arguments that a comparison between G.L. 1956 § 37-7-4—which tracks the language of article 6, section 19—and other statutes demonstrates that the framers of the constitutional provision intended for the preemptive right to pass to the heirs, successors, and assigns of the original condemnee.[5]

Accordingly, we conclude that the rights guaranteed by article 6, section 19 of the Rhode Island Constitution do not extend beyond the original condemnee's lifetime. The term "the person or persons from whom such remainder was taken" connotes the original condemnee only, and not his or her heirs, successors, and assigns upon death.

## Conclusion

For the reasons set forth in this opinion, we affirm. The papers shall be returned to the Superior Court.

---

[5] The estate does not claim a separate right of first refusal under G.L. 1956 § 37-7-4.



**TITLE OF CASE:**   Estate of Richard J. Deeble v. Rhode Island Department of Transportation.

**CASE NO:**   No. 2014-235-Appeal.
(PC 13-618)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   March 24, 2016

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Brian Van Couyghen

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Robert Clark Corrente, Esq.
Christopher Nicholas Dawson, Esq.

For Defendant:   Richard B. Wooley
Department of Attorney General