375 A.2d 953.

TOWN OF EAST GREENWICH *et al. vs.* WILLIAM P. DAY *et ux.*

JULY 28, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

2

JOSLIN, J. William P. and Susan Day, husband and wife, are the owners of a three-story residence situated in a district zoned R-10 in the town of East Greenwich. A single-family house is a permitted use in that district, but a multi-family dwelling is prohibited. Notwithstanding, the Days purchased the premises in 1972 anticipating that they and their children would occupy the first two floors of the dwelling and that the third floor would be rented as an apartment. Their plan suffered a setback when the building inspector refused them a building permit and charged them with violating the ordinance by having allowed a tenant to occupy the third floor apartment. The Days appealed, first to the zoning board of review, which sustained the building inspector, and then to the Superior Court, which reversed the board's decision. Thereupon, the members of the zoning board and the Town of East Greenwich initiated certiorari proceedings in this court seeking review of the Superior Court judgment. We ordered the writ to issue without prejudice, however, to the Days' right to raise the question of whether the petitioners have standing. *Town of East Greenwich* v. *Day*, 115 R.I. 944, 348 A.2d 30 (1975).

Before going to the merits, we consider the standing ques-

tion. It is settled that a zoning board lacks standing to request this court to issue its prerogative writ of certiorari for the purpose of reviewing a Superior Court judgment. *Hassell* v. *Zoning Bd. of Review*, 108 R.I. 349, 352-53, 275 A.2d 646, 649 (1971). Accordingly, the writ in this case, insofar as it depends for its validity on the board's standing to institute the proceedings, was improvidently issued.

Whether the town similarly lacks standing is a question which, in substance, was decided in *City of East Providence* v. *Shell Oil Co.*, 110 R.I. 138, 290 A.2d 915 (1972). In that case we held that a municipality, acting through its solicitor, may invoke the aid of the Superior Court for the purpose of challenging a zoning board decision granting an exception or a variance. The respondents seek to distinguish the *Shell Oil Co.* case from this case on the ground that in the former the municipality was a party to the proceedings in the Superior Court, whereas here the town's first appearance in the case was as an applicant for certiorari in this court. That distinction is not viable. That a municipality may have first invoked judicial assistance at this, rather than at the Superior Court level of a zoning dispute, or that it may not even have appeared when the case was in the Superior Court in no way eradicates or even minimizes the threat that a decision in a zoning dispute may pose to the public interest in the preservation and maintenance of the integrity of the zoning laws. The Legislature has assigned the protection of that interest to the local government and has directed that it act through its solicitor. General Laws 1956 (1970 Reenactment) §§45-24-6 and 45-24-7. In this instance, the solicitor was specially appointed for the task because the person holding that position was disqualified on account of a conflict of interest. When the special appointee instituted this action, he was acting within the scope of the authority conferred upon a city or town solicitor by the Legislature and consequently had standing.

Turning to the merits, it is undisputed that the property

under consideration was used as a two-family dwelling when the town's first zoning ordinance was adopted and that this permitted nonconforming use continued unbroken until late in 1967. From then until the Days purchased the property in 1972, it was owned successively by the Fuhrmann and Richardson families, each using it exclusively as a single-family residence.

The question before the board, then, was whether the nonconforming use was abandoned during the Fuhrmann-Richardson occupancy. In deciding that it had been, the board relied in part on the zoning ordinance provision that a legally nonconforming use that is discontinued for more than 2 years may not be renewed. That reliance was misplaced, for in *A. T. & G., Inc.* v. *Zoning Bd. of Review*, 113 R.I. 458, 463, 322 A.2d 294, 296 (1974), we held that, in enacting that kind of provision, a local legislature "was acting ultra vires of its authority in that it was attempting to abridge in the ordinance a right granted by the enabling act." We went on to say that "the cessation of a use for some period of time prescribed in an ordinance will not, standing alone, support a conclusion that the use had been terminated." *Id.* at 463, 322 A.2d at 297.

The petitioners, however, do not rest entirely on the board's dependence on the ordinance provision. They also contend that the board recognized and correctly applied those principles of the law of abandonment which require not only a cessation or discontinuance of a nonconforming use, but also that the circumstances surrounding that discontinuance or cessation are indicative of an intention to abandon the use and the vested rights therein. *A. T. & G., Inc.* v. *Zoning Bd. of Review, supra* at 463-64, 322 A.2d at 297; *Richards* v. *Zoning Bd. of Review*, 100 R.I. 212, 218, 213 A.2d 814, 817 (1965); 2 Rathkopf, *The Law of Zoning and Planning*, 61-3 (3d ed. 1972).

In support of their position that the board took appropriate cognizance of this standard, petitioners point to

that portion of its decision which recites that both the Fuhrmanns and Richardsons

> "intended to use the property only as a single family dwelling. They in fact so used the property during their entire period of ownership. The property was not rented, nor were any rooms rented, during the period of their ownership. They took actions to signify their intent, such as a change in the sewer assessment to single family use."

The evidentiary support for these findings consists only of the testimony of the building inspector that he was advised by the Fuhrmanns and the Richardsons that during their occupancies the entire structure had been used as a single-family residence, that in 1968 at the Fuhrmanns' request the annual sewer assessment had been reduced to the single-family dwelling rate, and that thereafter both the Fuhrmanns and the Richardsons paid the reduced charge.

On review, the trial justice discounted the evidence relied upon by the board as lacking in probative force with respect to the ultimate question of intent. More specifically, he found that the cessation or discontinuance of the nonconforming use from 1967 to 1972, though for a period of longer than the 2 years prescribed by the ordinance, was insufficient, standing alone, to support the conclusion that the use had been terminated. In addition, he found that the hearsay statements of the Richardsons and the Fuhrmanns established only that each intended to use the premises as a single-family dwelling and did not disclose an intention to abandon their vested right to use the dwelling for two-family occupancy, and that their discontinuance of the nonconforming use, even when coupled with the reduction in the sewer assessment, was not indicative of an intention to abandon the use. Obtaining a reduction in the sewer assessment charges, the trial justice said, rather than constituting an unequivocal action evidencing an intent to abandon, was susceptible to multiple interpretations, the most reasonable

and likely one being the owners' desire to save money. In his judgment that reduction was of no consequence, particularly when considered in conjunction with the testimony of a real estate expert to the effect that neither the Fuhrmanns nor the Richardsons had eliminated such characteristics commonly associated with multi-family dwellings as a four-car tandem driveway and separate gas and electric meters, thermostats, and kitchen and bath facilities for the various floors.

In sum, the trial justice concluded that there was no evidence of either an overt act or a failure to act during the Fuhrmann and Richardson occupancies sufficient to support an implication of an intent to relinquish a known right to devote the property to the permitted nonconforming use, and that without that kind of evidence there was no abandonment. Accordingly, he reversed.

In considering petitioners' challenge to that reversal, our only concern is whether the trial justice exceeded his authority under §45-24-20 to review in zoning matters. While that section admonishes a trial justice against substituting his judgment for that of a zoning board as to the weight of the evidence on questions of fact, it also permits him to reverse or modify a decision of the board

> "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are * * * (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record * * * ."

Whether under that language a trial justice is required — as we were when we were the only court reviewing zoning decisions — to sustain if there is any evidence in the record that supports the board's decision, or whether instead he is required to apply the "substantial evidence" or the "clearly erroneous" rule, we need not decide. Suffice it to say that, irrespective of which of those standards of review is applied, 5 years of nonuse of the dwelling for two-family occupancy

was merely evidence of an intent to abandon. Because that nonuse was unaccompanied by any overt act or failure to act indicating an intent to abandon, it was insufficient to extinguish the vested right to the nonconforming use. *A. T. & G., Inc.* v. *Zoning Bd. of Review, supra* at 463-64, 322 A.2d at 297. The only overt act relied on by the board was the change from a two- to a one-family sewer assessment. But as the trial justice pointed out, to infer from that fact standing alone an intent to abandon was purely speculative. It therefore lacked probative value and could not serve as a factual predicate for the legal conclusion that there was an abandonment.

The writ of certiorari issued on the petition of the Zoning Board of Review is quashed because improvidently issued; the petition of the Town of East Greenwich for a writ of certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record heretofore certified shall be remanded to the Superior Court with our decision endorsed thereon.

*Bradford Gorham,* for petitioner.

*F. Thomas O'Halloran,* for respondent.