**SOUTH COUNTY SAND & GRAVEL CO.**

v.

**TOWN OF CHARLESTOWN et al.**

**No. 80–151–Appeal.**

Supreme Court of Rhode Island.

June 16, 1982.

S. Thomas Cotroneo, Johnston, for plaintiff.

John P. Toscano, Jr., Town Sol., Charlestown, for defendants.

OPINION

SHEA, Justice.

This matter is before the court on appeal from the granting of a permanent injunction restraining the defendant, the town of Charlestown (the town), from preventing the plaintiff, South County Sand and Gravel Co. (South County), from mining gravel on its land in the town. A hearing was held in the Superior Court on January 9, 1980. The case had been docketed initially for

hearing on the plaintiff's request for a preliminary injunction, but the parties requested that the trial justice hear the matter on the merits for a permanent injunction. We affirm the granting of the permanent injunction against the town.

The evidence presented established that South County, through its president Roland Fiore, purchased the Charlestown gravel bank on September 16, 1979, from Sarah J. Browning with the intention of mining gravel from the site. Prior to the purchase, South County had leased the site in 1977 for the same purpose.

Five witnesses testified at the hearing mainly about the use that had been made of this gravel bank for the ten-year period prior to its purchase by South County. The trial justice found that the use that had been made of the land during this period qualified it as a continuous lawful nonconforming use. He also indicated that South County did not have to apply for a special exception pursuant to the town's zoning ordinances. Article 1, § 6(C)(3) requires obtaining a special exception from the town's zoning board prior to initiating earth-removal operations. Subsection (c), however, eliminates the necessity of obtaining the special exception where earth removal operations are in existence prior to the effective date of the ordinance.

> "(c) Real property acquired or leased prior to the effective date of this ordinance for the purpose of earth removal or the processing of sand and gravel and in use for such purpose on the date of the enactment of this ordinance shall be considered as a lawful nonconforming use and shall not require the grant of a special exception."

■ The town argues that since South County first leased and subsequently purchased the gravel bank after the effective date of the above ordinance, the general provision requiring a special exception applies. This argument is without merit. This court has recently determined that a nonconforming use is an alienable property interest and that a mere change in ownership does not destroy the nonconforming use. *Town of Coventry v. Glickman*, R.I., 429 A.2d 440 (1981). The situation here is precisely the same since the trial justice found a lawful nonconforming use in existence at the time South County acquired the property.

■ In light of *Town of Coventry v. Glickman, supra,* the only issue we shall address is whether the trial justice committed error by finding that the gravel bank operated as a lawful nonconforming use because it was not abandoned at any time during the ten-year period prior to the commencement of this action. Accordingly, the findings of fact of a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or unless the trial justice has overlooked or misconceived material evidence. *Raheb v. Lemenski*, 115 R.I. 576, 350 A.2d 397 (1976). After reviewing this record, we conclude that he has not overlooked or misconceived any evidence. Roland Fiore testified that the site had been mined by another construction company in 1967 and 1968, and also by the town sometime around 1975. He further testified that he had authorized one Bud Greene to mine gravel at the site when he first leased the property in 1977 and that this authorization continued after he had purchased the property. Fiore's lease with Sarah Browning specifically allowed mining gravel.

George (Bud) Greene, a general contractor, testified that he has removed gravel from the pit on South County's land ever since it was given up by the prior contractor in the late sixties. He testified that Thomas Browning, Sarah Browning's nephew, had given him permission to mine gravel from the site. Greene conceded that he had not mined substantial quantities of gravel from the site between 1969 and 1980. In fact, in some years he may only have taken gravel on one occasion. Greene admitted that the dominant purpose behind occasionally mining gravel was to keep the pit activated.

The remaining three witnesses gave evidence in support of the town's position.

Peter S. Richards, who lived across the street from the gravel site, stated that during the entire period in question he had observed only one truck leaving the site with gravel and that that was sometime in 1979. On cross examination, Richards said that he worked on the second shift commencing at 3 p. m. and thus would have been unaware of whether or not gravel had been removed from that time on during working days. He also admitted that there were other entrances to the gravel site that could not be seen from his house. In response to this assertion, Bud Greene testified that he did not remove gravel by taking the road that Richards could observe from his house.

Robert P. Bankel testified that he has operated an umbrella factory across from the gravel site since 1968. He claimed that the property was actually used as a cornfield and that he had often witnessed activities on the property consistent with the planting and harvesting of corn. He further testified that he had observed gravel being removed from the site on only one occasion since 1969 and that was when a local mental-health clinic was built. On cross examination Bankel admitted that he closed his factory in the winter months. Further, he also admitted that the cornfield was in the front of the property whereas gravel was mined from the rear of the property.

The final witness was Girard J. DiChristofaro, chief of police for the town. He testified that he had been the chief of police for approximately two years. Prior to becoming the chief he had patrolled the area in question as a member of the Rhode Island State Police. He stated that he knew of only two occasions on which gravel was mined. Both times were in 1979, and the police stopped the activity on each occasion.

After hearing this evidence, the trial justice concluded that he believed the testimony of Fiore and Greene in regard to the use of this property. We find nothing in this record which would indicate that the justice was clearly wrong. Assessing credibility is an element of the factfinding process. The testimony given by those who claimed that the property was almost never used as a gravel mine was not conclusive. These witnesses were not in a position to view the premises at all times, and other testimony revealed that there was more than one entrance to the gravel mine.

■ In sum, there is legal, competent evidence in the record to support the finding by the trial court of a continuing nonconforming use. The mere facts that the amount of use for this ten-year period was not substantial and that Mr. Greene conceded that his dominant purpose for removing gravel was to keep the site active are not determinative. This court has held that even a discontinuance of a nonconforming use for a period of time does not constitute an abandonment of that use. There must also be an intent to abandon. *Town of Coventry v. Glickman*, R.I., 429 A.2d at 442; *Town of East Greenwich v. Day*, 119 R.I. 1, 4, 375 A.2d 953, 956 (1977). There is nothing in the record to indicate such an intention.

■ Finally, the town argues on appeal that South County's current use of the gravel bank constitutes an enlargement or an intensification of the preexisting nonconforming use and that therefore the company must obtain a special exception pursuant to art. 1, § 6(C)(3)(d) of the town's zoning ordinances. This issue was not raised in the Superior Court, and we shall follow our well-established rule and decline to consider it for the first time on appeal. *Peloso v. Imperatore*, R.I., 434 A.2d 274 (1981); *Russell v. Kalian*, R.I., 414 A.2d 462 (1980).

For the reasons stated, the appeal is denied and dismissed, the granting of the permanent injunction is affirmed, and the papers of the case are remanded to the Superior Court.