DECISION
Before this Court is the appeal of Edward Jerome (plaintiff) from a September 6, 1995 decision of the Zoning Board of Review for the Town of Tiverton (Board). The decision appealed from vacated a cease and desist order issued by the Tiverton Zoning Official on July 10, 1995. Plaintiff is a neighboring property owner whose complaint regarding Wallace and Carol A. DeSouzas' use of the subject property resulted in the July 10, 1995 order being issued. Jurisdiction in this court is pursuant to G.L. 1956 § 45-24-69.
Facts/Travel
Wallace and Carol A. DeSouza own the subject property described as Lot 65 of Assessor's Plat 92, located at 656 Highland Road, Tiverton, Rhode Island. The property is presently zoned R-40. The property consists of two dwellings and a building, referred to by the parties as a "barn." (Tr. at 25). The DeSouzas purchased the property in 1975 and have since used the barn as an office and as storage space for equipment related to their swimming pool business. (Tr. at 27, 31-3). The plaintiff owns property located at 610 Highland Road, Tiverton, Rhode Island, which lies within two hundred feet of the DeSouzas' property. (Complaint ¶ 1).
On July 10, 1995, Carl L. Dumas, zoning official for the Town of Tiverton, issued a decision ordering the DeSouzas to refrain from doing any business at the subject property. (See Letter from Office of Building Official dated 7/10/95). On August 7, 1995, the DeSouzas appealed the decision of the zoning official to the Board. (See Petition of Appeal dated 8/7/95). A properly advertised hearing was held on September 6, 1995. At the hearing, Wallace DeSouza testified that in 1975 he purchased the subject property from Elma Dollar and Lorraine Merewether. (Tr. at 25). Mr. DeSouza testified that prior to the purchase he visited the property and, at that time, the barn was "filled to capacity" as a storage area for nets, floats, rope and other equipment used for fishing. (Tr. at 27). He stated that the barn also had an area set aside for an office which consisted of a desk, chair, calendars and other office supplies. Id.
The Zoning Enforcement Officer's issuance of the cease and desist order was based on his holding that by "running a business out of the building" plaintiffs were violating the Ordinance. (Tr. at 11). At the hearing, Mr. Dumas explained that the Ordinance prohibits conducting a commercial business in a residential zone. In addition, he stated that a "home business" is permitted in a residential zone provided there are no employees.
Next, Mr. DeSouza testified as to the nature of his swimming pool business. He gave the following testimony explaining his use of the barn in connection with the business:
 "MR. DESOUZA: . . . I'm a pool builder, and I don't do any manufacturing or anything there, strictly storage. I go to customer's houses. They don't come to me; I go to their houses. And it was strictly storage . . . And that's what I've been doing.
 MR. BRADY: And you've been doing that since 1975?
 MR. DESOUZA: Yes.
 . . .
 MR. BRADY: And what's the nature of the activity that you carry on? Is it storage in the barn, is that it?
 MR. DESOUZA: It's strictly storage. I don't sell anything. I don't have a store. I don't do any retail out of their. I store the stuff there. We show up to work in the morning, and usually by 7:45, we're out of there for the day. The only one that comes back is myself, but, you know, I live there.
 MR. BRADY: . . . Have you used motor vehicles or trucks in your business?
 MR. DESOUZA: Just pickups and a van.
 MR. BRADY: And are they kept on the property at the Highland Road address?
 MR. DESOUZA: Yes, yes.
 MR. BRADY: And have you been doing that since 1975?
 MR. DESOUZA: Yes.
 . . .
 MR. BRADY: Any employees on the site?
 MR. DESOUZA: During the day?
 MR. BRADY: Yeah.
 MR. DESOUZA: No. They show up — he comes to work in the morning along with my son and myself and we're out of there.
 MR. BRADY: Are there any employees working at this barn?
 MR. DESOUZA: No, no.
 . . .
 MR. BRADY: . . . And you have an office in the barn?
 MR. DESOUZA: Yes.
 MR. BRADY: And there was an office in the barn when you bought the property?
 MR. DESOUZA: Yes.
 MR. BRADY: And you've continuously done that since 1975?
 MR. DESOUZA: Yes.
 . . .
 MR. COMERFORD: Now, you say you store things now in the barn for your pool business?
 MR. DESOUZA: Right.
 MR. COMERFORD: What do you store [there]?
 MR. DESOUZA: Filters, heaters, pumps and motors, whatever I need to construct a pool.
 MR. COMERFORD: Okay. And how do these things get to your barn?
 MR. DESOUZA: By truck.
 MR. COMERFORD: Your truck —
 MR. DESOUZA: No.
 MR. COMERFORD: — or is there deliveries from vendors?
 MR. DESOUZA: It depends. It could be a vendor. It could be something I picked up or one of my guys picked up and delivered there.
 MR. COMERFORD: And how frequently do vendors come onto your property delivering these different supplies for your business?
 MR. DESOUZA: In the summertime, once a week; in the winter, never."
(Tr. at 30-3, 35, 48).
The Board then heard testimony from Paul Jerome. (Tr. at 49-50). Paul Jerome testified that he has owned abutting property located at 634 Highland Road since 1960 and has been familiar with the subject property since 1930. (Tr. at 50, 55). Mr. Jerome testified as to the property's ownership history and as to its prior use. He testified that in 1915 the property was purchased by Holder and Hannah Wilcox. (Tr. at 51). He stated that Holder Wilcox operated a fish trap business and, in connection with the business, the barn was used for the making, repairing and storing of fish nets and traps and as storage space for other equipment. (Tr. at 57-9). In addition, Mr. Jerome stated that the company's trucks were parked by the barn and stored on the property in the winter. Id.
Paul Jerome continued that in 1959 when Holder Wilcox died, his son, Carl Wilcox, took over the business. (Tr. at 55-6). He explained that after the death of Carl in 1967, his sisters, Elma Dollar and Lorraine Merewether, took title to the property and the fish trap business was purchased by Paris Gondola. (Tr. at 61-2). Mr. Jerome stated that Paris Gondola stored fishing equipment in the barn. (Tr. at 62). Both Mr. DeSouza and Mr. Jerome testified that immediately prior to the DeSouzas' purchase of the property in 1975, they witnessed Paris Gondola's truck enter onto the property and remove fishing equipment from the barn. (Tr. at 29, 60).
Prescott Peckham was the last witness to testify before the Board. Mr. Peckham stated that he has lived in Tiverton all his life, grew up in the home now owned by Paul Jerome, his stepfather, and presently owns the property located at 644 Highland Road. (Tr. at 64). Much of his testimony corroborated the testimony offered by Paul Jerome. He stated that during Paris Gondola's ownership, the fish trap business continued to operate under the name of "H.N. Wilcox." (Tr. at 64-8). Mr. Peckham gave the following testimony explaining in greater detail Paris Gondola's use of the barn:
 "MR. BRADY: . . . What about the use of the barn after Carl Wilcox died and after the sale of the Wilcox business, do you know what use was made of the barn?
 MR. PECKHAM: There wasn't much activity there. I would say it was mostly storage . . .
 MR. BRADY: And the same type —
 MR. PECKHAM: As far as I know, it was just used for — they stored stuff there.
 MR. BRADY: Okay. So they stored the same type of material, fishing type product — not product, but equipment, lines and nets; is that correct?
 MR. PECKHAM: Yes.
 . . .
 MR. SOUSA: You said after the gentlemen died, they used it for storage. Does that mean that they brought the stuff there, stored it —
 MR. PECKHAM: I'm not aware. I know there was equipment in the barn.
 MR. SOUSA: But it was just equipment that was left there after the sale or were there people actually coming and getting the equipment?
 MR. PECKHAM: To my knowledge, no one came there but there was stuff in the barn.
 MR. WILLIAMSON: There was no nets — no traps mended after the Wilcox sisters sold, just storage?
 MR. PECKHAM: I would say that's the best to my knowledge."
(Tr. at 69-71).
Following the hearing, the Board voted unanimously to grant the defendants' appeal from the decision of the Zoning Enforcement Officer, thereby vacating the cease and desist order.Id. The plaintiff filed a timely appeal to this court.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 § 45-24-69(D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n., Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO. Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
Nonconforming Use/Abandonment
The undisputed evidence in the record reveals that when the first zoning ordinance was adopted by the Town of Tiverton on October 15, 1964, the barn located on the subject property was used by the Wilcox family for storage and as an office in connection with the family fish trap business. The ordinance caused the property to be zoned residential and prohibited the following uses in all residential zones: all general commercial uses; use of structure or yard for storage of material, products, supplies or other equipment; and use of the property for an office.[1] (Town of Tiverton Zoning Ordinance, Art. II, §§ 7-10 (1964)). Accordingly, with the adoption of the first ordinance in 1964 the dedicated uses of the property were rendered legal nonconforming uses.[2]
On March 23, 1970, the Town of Tiverton adopted a new zoning ordinance. Like the 1964 ordinance, the 1970 ordinance protected the continuation of legal nonconforming uses existing at the time of its enactment.[3] Like the two prior ordinances, the current zoning ordinance (Ordinance), effective June 27, 1994, prohibits use of the subject property for storage and as an office.[4]
Moreover, the Ordinance, like its predecessors, protects nonconforming developments lawfully in operation at the time of its effective date.[5]
It is well-settled in Rhode Island that a mere change in ownership does not destroy preexisting, legal nonconforming uses of property. Harmel v. Tiverton Zoning Bd. of Review,603 A.2d 303 (R.I. 1992). Article XIV, § 3 of the Ordinance addresses the issue of abandonment of a nonconforming use.[6] Pursuant to this article, a nonconforming use once abandoned is not permitted to continue. Tiverton Zoning Ordinance Art. XIV, § 3. Abandonment is defined by the Ordinance as the discontinuance of the nonconforming use for a period of one (1) year or more and consisting of some overt act, or failure to act, which would lead one to reasonably believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use. Id. Accordingly, where a nonconforming use is halted for a period of one year, the owner is presumed to have abandoned the nonconforming use. The property owner must then rebut the presumption of abandonment with sufficient evidence of intent not to abandon the nonconforming use. Id.
Generally, under Rhode Island law, the zoning enabling act and ordinance in effect at the time of the zoning board's decision controls. See Ocean Road Partners v. State,612 A.2d 1107, 1112 (R.I. 1992). Section 45-24-39 (C) of the Zoning Enabling Act provides, in pertinent part:
 "[I]f any nonconforming use is halted for a period of one year, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use."
It is arguable that § 45-24-39 (C) does not apply to the instant matter. The undisputed evidence in the record reveals that the DeSouzas have continuously used the property in connection with their swimming pool business since 1975, eighteen (18) years prior to the enactment of the present enabling act. The plaintiff contends that the nonconforming use was abandoned before the DeSouzas purchased the property, which would mean that their use of the property over the past two decades has been unlawful. Prior to the enactment of § 45-24-39 (C), it was more difficult for a town to prove abandonment of a nonconforming use.
Until 1993, case law controlled the issue of abandonment. The law provided that the burden of proof was on the party asserting abandonment and neither the burden of proof, nor persuasion, ever shifted to the property owner regardless of the period of non-use. Town of Coventry v. Glickman, 429 A.2d 440 (R.I. 1981);Washington Arcade v. Zoning Board of Review, 528 A.2d 736 (R.I. 1987).
Arguably, if abandonment could not have been proven under the law in existence when the alleged unlawful use began, the town should not be permitted to find abandonment based upon the newly enacted laws. The town was required to act with due diligence and should not be rewarded for its failure to do so. However, the issues of laches and the possible impairment of the DeSouzas vested rights need not now be addressed by the Court. Under both prior case law and the stricter standard set forth in §45-24-39 (C), intent is determinative on the issue of abandonment and the record contains competent evidence to support a finding that the nonconforming use of the barn as an office and for storage had not been abandoned. The fact that the Board may have determined the issue under the wrong standard will not justify reversal of the decision. See Mesolella v. City of Providence,439 A.2d 1370, 1373 (R.I. 1982)(court may sustain a correct judgment even if it was reached through faulty reasoning or mistake of law).
The question of abandonment is one of fact. It is well-settled that mere nonuse, even for an extended period of time, is not conclusive evidence of abandonment. Town of Coventryv. Glickman, 429 A.2d 440, 442 (R.I. 1981); Town of EastGreenwhich v. Day, 119 R.I. 1, 375 A.2d 953, 956 (1977). Intent may be proved by inference from circumstantial evidence. With respect to use of the barn for storage, the undisputed evidence in the record of Paris Gondola's failure to remove the equipment at an earlier date establishes that use of the barn for storage never halted but, in fact, continued. Accordingly, the Board had before it competent evidence to support a finding that Paris Gondola did not intend to abandon use of the barn for storage and that in 1975, when the DeSouzas purchased the property, such use was protected under the ordinance as a preexisting, legal nonconforming use. See South Cty. Sand Etc. v. Town ofCharlestown, 446 A.2d 1045 (R.I. 1982)(insubstantial use of gravel bank for mining operations during ten-year period was sufficient to support finding of continuing nonconforming use);Washington Arcade v. Zoning Bd. of Review, 528 A.2d 736
(continued use of premises by corporation to sell inventory and maintain records after cast stone manufacturing project came to a halt was sufficient evidence of intent not to abandon nonconforming industrial use of property). Therefore, the DeSouzas continued use of the barn for storage is entitled to protection under Article XIV of the current Ordinance.
Furthermore, the record contains legally competent evidence to support a finding that in 1975 use of the barn as an office was a pre-existing, legal nonconforming use. The undisputed facts in the record reveal that the barn was left undisturbed after the death of Carl Wilcox in 1967, until the DeSouzas purchased the subject property in 1975. Accordingly, no office use was made of the barn for approximately eight years. However, as stated above, mere non-use is not conclusive evidence of abandonment.
Applying the Zoning Enabling Act and Article XIV, § 3 of the Ordinance, nonuse for a period of one year gives rise to a rebuttable presumption of abandonment. The Board held the DeSouzas to this standard, and they met the burden of proof on the issue of abandonment. The DeSouzas presented the testimony of both Paul Jerome and Prescott Peckham which establishes that the Wilcox family used the barn for an office in connection with the family fish trap business. Prescott Peckham testified that there was little, if any, activity at the barn during Paris Gondola's ownership of the business. In addition, Wallace DeSouza testified before the Board that when he visited the barn in 1975, an area was set aside for an office which consisted of a desk, chair, calendars and other office supplies. From this uncontroverted evidence, the Board could infer that Paris Gondola had no intention of abandoning his vested right to use the barn as an office as its nonuse was unaccompanied by any overt act or failure to act indicating an intent to abandon. See Richards v.Zoning Bd. of Providence, 100 R.I. 212, 213 A.2d 814 (1965)(use of premises as industrial bakery had not been abandoned where oven was still on premises and premises was not altered so as to prevent such use). Accordingly, the Board had before it sufficient evidence to support a finding that in 1975, use of the subject property as an office was protected under the 1970 ordinance as a pre-existing, legal nonconforming use and is entitled to protection under the applicable provisions of the current Ordinance. See Town of East Greenwhich v. Day,119 R.I. 1, 375 A.2d 953 (five years of nonuse of three-story residence for two-family occupancy was merely evidence of intent to abandon the nonconforming use, and as nonuse was unaccompanied by any overt act or failure to act indicating an intent to abandon, it was insufficient to extinguish the right to the nonconforming use).
For the foregoing reasons, on the factual issue of abandonment with respect to use of the barn as both an office and for storage, this Court must defer to the findings of the Board.
Change of Use
The plaintiff argued before the Board, and presently maintains, that the DeSouzas' use of the barn in connection with a swimming pool business constitutes a change of use and is prohibited under the Ordinance in the absence of a use variance. Concluding that use of the barn never changed, the Board granted the DeSouzas' appeal of the cease and desist order.
Whether a subsequent use of property constitutes a "change of use" is a question of fact. Santoro v. Zoning Bd. of Town ofWarren, 93 R.I. 68, 171 A.2d 75 (1961). In Santoro, the Court determined that the proposed replacement of a wooden structure which housed a nonconforming use constituted a change in use prohibited under the applicable ordinance. In so holding, the Court noted that replacing the existing structure would "mean additional business and increased traffic and noise, [which] together constitute a change of the nonconforming use." Id. at 72. The Court affirmed the finding of the board that the proposed use was more intrusive and less desirable than the pre-existing nonconforming use.
Based upon the holding in Santoro, it is clear that whether a subsequent use of property constitutes a change in use is a matter of degree and depends upon the facts of each case. Unlike in Santoro, there is no evidence in the record that the DeSouzas' use of the property increased the nonconformity to any degree. Moreover, the undisputed evidence in the record reveals that the DeSouzas' use of the barn is, and has been, essentially the same as its prior use by both the Wilcox family and Paris Gondola.[7] Accordingly, the Board had before it sufficient facts upon which to conclude that use of the barn by the DeSouzas in connection with their swimming pool business did not effect a change of the nonconforming use pursuant to Article XIV, § 6 (b) of the Ordinance. See Harmel, 603 A.2d 303 (no change in use where prior use of premises as restaurant and banquet facility was associated with private club as both uses involved restaurant open to public and banquet facility).
After a review of the entire record, the Court concludes that the Board's decision is supported by reliable, probative, and substantial evidence of the whole record. Accordingly, the Court finds that the Board did not abuse its discretion in granting the appeal of Wallace and Carol A. DeSouza from the cease and desist order issued by the Tiverton Zoning Official. In addition, the Court finds that substantial rights of the plaintiff have not been prejudiced by the Board's decision. Therefore, the Board's September 6, 1995 decision is hereby upheld.
Counsel shall submit the appropriate judgment for entry.
[1] The ordinance permitted the use of residentially zoned property for the storage of one commercial vehicle of not more than one and a half ton capacity. (Town of Tiverton Zoning Ordinance, Art. II, § 11 (1964)). Otherwise, use of residentially zoned property for the storage of commercial vehicles was prohibited under the ordinance. Id.
[2] Article V, § 1 of the first ordinance provides:
"The lawful use of a structure or of land in a manner not conforming to the provisions of this ordinance, existing at the time of its passage or of its subsequent amendment, shall constitute a nonconforming use and shall be permitted to continue."
[3] Article V, §§ 2, 3 of the 1970 ordinance provided in pertinent part:
"Any use of land, premises, structure or combination thereof, which was lawfully in operation at the time of the passage of this ordinance, but is not in conformity with the provisions of this ordinance, shall be considered as a legal nonconforming use . . .
Any legal non-conforming use shall be permitted to continue in the manner existing at the time of adoption of this ordinance, until such use is discontinued, destroyed, demolished or changed."
[4] The Ordinance prohibits the use of property in a R-40 zone for an "office building" and for the "storage of non-flammable and non-explosive materials in a building." (Town of Tiverton Zoning Ordinance, Art. IV, §§ 7, 12).
[5] Article XIV provides in pertinent part:
"Any use of land, premises, structure or combination thereof, which was lawfully in operation at the time of the effective date of this ordinance, but is not in conformity with the provisions of this ordinance, shall be considered to be a legal nonconforming development.
. . .
All lawfully nonconforming developments shall be permitted to continue in the manner existing at the time of the passage of the ordinance rendering it nonconforming, until such use or structure is abandoned, demolished or otherwise discontinued by the voluntary action of the owner."
[6] Article XIV, § 3 provides in its entirety:
"A lawful nonconforming use of any land, premises, structures or combination thereof, which has been abandoned shall not thereafter be used except in conformity with the regulations of the district in which it is located. Abandonment, as that term is used in this section, shall mean the discontinuance of the nonconforming use for a period of one (1) year or more, and consisting of some overt act, or failure to act, which would lead one to reasonably believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use. In all such cases, the owner will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence by the owner of his or her intent not to abandon the use."
[7] Although the DeSouzas' use of the barn as an office and for storage was associated with a different business, the clear and unambiguous language of Article IV, §§ 7 (c) and 12 (a) of the Ordinance does not prohibit such uses from an R-40 zone based upon the specific commercial use with which they are associated.