[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the City of Pawtucket (the Board), denying United Windows, Inc.'s (appellant) application for use and dimensional variances pursuant to Section 410-113 of the Pawtucket Zoning Ordinance (Ordinance). Jurisdiction is pursuant to G.L. § 45-24-69.
 Facts/Travel
Appellant owns property designated as Plat 54, Lot 818 and located at 22 Colonial Road in Harrisville, Rhode Island Prior to 1960, a three-family residence was located on the subject premises. At that time the State condemned the premises by eminent domain and subsequently demolished the building for the purpose of constructing Interstate Highway 95. The State, however, did not utilize the parcel for the Route 95 project, and in approximately 1974 the land was repurchased by the previous owners. Nothing has been constructed on the parcel since the building was demolished by the State.
In 1997 previous owners of the lot unsuccessfully sought a variance to construct a two-family dwelling thereon. The appellant purchased the parcel two and a half years prior to filing the instant application for variances to construct a single-family dwelling.
The property is located in an RM-zone (residential multifamily). According to the Ordinance, this zone is "intended to continue single-household and multi-household dwellings of specified density and building height in those areas where such development is prevalent." § 410-2.[1] In order to construct a single-family dwelling in the RM zone, the zoning ordinance requires lots to comprise a minimum of 5,000 square feet of area and a 50-foot frontage. This lot's area consists of 2,234 square feet, and has 40.1 feet of frontage.
On January 30, 2002, the appellant filed an application requesting a variance from § 410-44 dimensional regulations relative to "front, rear and side-yard setbacks, lot frontage and lot size" and (2) a variance from § 410-77.B(1), which appellant characterized as a "use variance for front yard parking."
After having held a public hearing on February 26, 2002, the Board rendered its unanimous written decision denying the application on April 24, 2002. At the hearing appellant's counsel indicated that appellant requested variances in order to build a single-family residence with parking provided. The Board was presented with a site plan depicting a proposed single-family dwelling with dimensions of 22' by 38' feet with two parking spaces in the front yard and no driveway. Appellant's counsel outlined the history of the parcel and acknowledged that the lot is undersized. He explained that the Board denied the 1997 application for construction of a two-family residence finding that a building of such size would block the view of traffic and impact traffic flow. Counsel asserted that traffic flow would not be impacted by construction of the proposed single-family dwelling because two of the adjacent streets are one-way streets. He further opined that traffic would not be blocked by the proposed building. He stated that a single-family dwelling is a low profile use and would not change the character of the neighborhood. He did not discuss or present evidence as to whether the appellant would be denied a legally permitted use of his property if the variances were to be denied.
Susan Wilcox, a neighbor, lodged a written objection to the refection of a house on the parcel, asserting (1) that there is not enough on-street parking in the area, and (2) that the dwelling would contribute to traffic congestion.
On March 5, 2002, the Board voted on appellant's application. Prior to that vote, the Board took into account a Department of Planning and Redevelopment Advisory Opinion (Advisory Opinion) that recommended denial of the request for variances because the lot is "very small" and not in conformance with the City's Comprehensive plan.[2] The application was thereafter unanimously denied.
On April 24, 2002, the Board issued its written decision, which included reference to the Wilcox objection and the Advisory Opinion. In denying the requested use variance for front yard parking, the Board stated that the applicant had failed to demonstrate evidence of hardship and concluded that the appellant:
 "failed to offer evidence . . . that the present return on the property is so low that to require its continued devotion either to its present use or to others permitted under the ordinance would be confiscatory. Without such a showing, a naked assertion of economic unfeasibility is meaningless. The applicant has not successfully established that they will be deprived of all beneficial use of their property if the application is denied."
In its review of the request for dimensional relief from setbacks, lot frontage and lot size, the Board stated it was relying on the facts offered at the hearing and the Board's inspection of the parcel. The Board found as follows:
 "[I]t appears that if a dimensional variance is not granted to the applicant, they will not suffer an adverse impact amounting to more than a mere inconvenience since the record is absent substantial and probative evidence that the relief being sought is reasonably necessary for the full enjoyment of the permitted use."
The Appellant filed a timely appeal of the Board's decision.
 Standard of Review
General Laws § 45-24-69(d) guides this Court in its review of the zoning board of review's decision:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court is obliged to accord deference to the decision of the zoning board, the members of which are "presumed to have knowledge concerning those matters which are related to effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). The Court cannot substitute its judgment for that of the zoning board but must uphold a decision that is supported by substantial evidence contained in the record. Hein v.Town of Foster Zoning Bd. of Review, 632 A.2d 643, 646 (R.I. 1993). Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than preponderance." Lischio v. ZoningBd. of Review of the Town of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Board's decision. New England Naturist Ass'n., Inc. v. George,648 A.2d 370, 371 (R.I. 1994). The Court may modify a decision of the board if, inter alia, the findings are "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record" or otherwise affected by legal error. R.I. Gen. Laws § 45-24-69 (d)(5).
 Nonconforming Use
A nonconforming use is defined as "a particular use of property which does not conform to the zoning restrictions applicable to that property but which use is protected [against the restrictions] because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then. See Town of Scituatev. O'Rourke, 103 R.I. 499, 503, 239 A.2d 176, 179 (1968). See also 1 Anderson's American Law of Zoning, § 6.01 (4th ed. Young 1996); 8A Eugene McQuillin, Municipal Corporations, § 25.186 (3rd ed. 1996); 4 Arlen H. Rathkopf, The Law of Zoning and Planning, § 51.01 (1999); E.C. Yokely, Zoning Law Practice, § 22-2 (4th ed. 1979)." RICOCorp. v. Town of Exeter, 787 A.2d 1136, 1144-1145 (R.I. 2001). A change in ownership does not extinguish a nonconforming use. Town of Coventryv. Glickman, 429 A.2d 440, 442 (R.I. 1981). A nonconforming use may, however, be eliminated upon proof that the nonconformance was abandoned by the owner. See Washington Arcade Assoc. v. Zoning Bd. of Review of theCity of North Providence, 528 A.2d 736,738 (R.I. 1987) (intent to abandon and an overt act "which would lead one to believe that the owner neither claims nor retains any interest in the subject matter of the abandonment" must be shown to prove abandonment of a nonconforming use); RICO Corp.,
787 A.2d at 1145 (citing Inhabitants of Windham v. Sprague, 219 A.2d 548, 552-53 (M.E. 1966)) ("`[n]onconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary'"). In pertinent part, § 410-69(H) of the instant Ordinance dictates that when a building or structure that is nonconforming by dimension is voluntarily demolished, it "shall not be reconstructed, unless it conforms with the dimensional regulations of the zone in which it is located. Such voluntary demolition shall be deemed abandonment."
In its appeal, appellant adverts to a novel nonconforming use argument that was not raised before the Board. The Court need not consider issues that were not raised before the Board. Allen v. Zoning Bd. of Review,75 R.I. 321, 66 A.2d 369, 370 (1949) (Supreme Court declined to address issues that were not raised in the application for variance). Because the facts on this issue are undisputed and are reflected in the record, the issue will be considered by this Court as it represents a question of law.[3]
Appellant argues that the original owners of the three-family residence who repurchased the parcel from the State in the mid-1970s, did not consent to the State's condemnation or demolition of the building. Accordingly, appellant asserts that the building which was nonconforming by dimension was not "voluntarily demolished" and constituted a nonconformance that was not abandoned. Appellant asks the Court to "remand the matter to the City of Pawtucket Building Department with an order to allow [appellant] to submit plans reflecting a dwelling of the same size and dimension as that previously existing on the site and, further, that as long as said proposed structure is of the same size and dimension, said plans shall be approved by the City."
Appellant's argument — that the previous owners' lack of intent to abandon the nonconforming use runs with the land — is without merit. It is well settled that the owner's intentions and actions dictate whether a nonconformance has been abandoned. See Town of West Greenwichv. A. Cardi Realty Associates, 786 A.2d 354, 361 (R.I. 2001); WashingtonArcade Assoc., 528 A.2d. at 738; Town of East Greenwich v. Day, 119 R.I. 1, 4; 375 A.2d 953, 955 (1977); A.T. G., Inc. v. Zoning Bd. of Reviewof the Town of North Smithfield, 113 R.I. 458, 464; 322 A.2d 294, 297 (1974). In the instant case, the record reflects that (1) a three-family residence existed on the subject premises; (2) the subject premises were condemned by eminent domain, thereby making the State the owner of both the parcel and the dwelling; and (3) the dwelling was demolished by the State. Indeed, the record reflects that the State intended to use the parcel for Route 95 and voluntarily demolished the three-family dwelling for that purpose. Accordingly, the dwelling constituted a dimensional nonconformance that was abandoned by the State and is now extinguished.
 Variances
In its application requesting various forms of relief from the Ordinance for the purpose of constructing a single-family dwelling on an undersized lot, appellant stated that he was seeking a "use variance" pursuant to § 410-77.B(1) for front yard parking. A use variance is defined by Rhode Island law as "permission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." R.I. Gen. Laws § 45-24-31(61)(i).
Appellant's site plan proposes front yard parking which is prohibited by § 410-77.B(1).[4] Although the application for variances described the request for relief from the parking regulations as a use variance, appellant now argues that he was improperly advised by City Officials in this regard. He asserts that the request should have been treated as one for dimensional relief. Appellant argues that the proposed single-family dwelling is a permitted use under the Ordinance and that the request for deviation from the parking requirement falls under the rubric of a request for dimensional relief.
Zoning experts have noted that "off street parking restrictions do not fall easily into either classification [use and dimensional] and some cases have treated them as use restrictions." 5 Arden H. Rathkopf, TheLaw of Zoning and Planning, § 83:30 (2002); see also In the Matter ofOff Shore Rest. Corp. v. Linden, 282 N.E.2d 299 (N.Y. 1972) ("off street parking requirements subsume `a variance of a different nature, technically involving both use and area'"). In Newton v. Zoning Bd. ofReview of Warwick, 713 A.2d 239, 242 (R.I. 1998), the Supreme Court agreed that a request for relief from parking regulations may be treated as one for dimensional relief. In Newton, however, there was no dispute as to whether a parking deviation should have been treated as a use variance. In addition, the Court's opinion in the Newton case does not reference the substance of the parking ordinance at issue or the nature of the parking deviation requested.
Here the appellant seeks to use the front yard for parking, a use that the Ordinance expressly forbids. § 410-77.B(1) ("no parking shall be allowed in the front yard at any time.") The Board's application of the standard for a use variance was not an error. In the Matter of Off ShoreRest. Corp., 282 N.E.2d at 304 (court applied the rules applicable to use variance to applicant's request for relief from off-street parking regulations).
The Ordinance with respect to variances contains language that is substantively the same as the provisions of G.L. 1956 §45-24-41(c)(1)-(4) and (d)(1)-(2). The Ordinance provides that a successful petitioner demonstrate:
 (a) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area and not due to a physical or economic disability of the applicant.
 (b) That said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 (c) That the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this chapter or the Comprehensive Plan of the city.
 (d) That the relief to be granted is the least relief necessary.
 (2) The Board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 (a) In granting a use variance, the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this chapter. Nonconforming use of neighboring land or structures in the same district and permitted use of land or structures in an adjacent district shall not be considered grounds for granting a use variance. § 410-113.
The petitioner is required to show that the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the ordinance. G.L. § 45-24-4(d)(1). Essentially, "[t]he allowance of a use variance as an administrative remedy is a constitutional safeguard to avoid the confiscatory effect that would follow a literal enforcement of a provision of a zoning ordinance that operates to deprive an owner of all beneficial use of his land" Roland F. Chase, Rhode Island Zoning Handbook, § 131 (1993). With respect to zoning board decisions, the Rhode Island Supreme Court has instructed that "`a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken.'" Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001) (quoting IrishPartnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986)). The Board's findings must "be factual rather than conclusion, and the application of the legal principles must be something more than the recital of a litany." Id; see also von Bernuth v. Zoning Bd. of Rev. of the Town ofNew Shoreham, 770 A.2d 396, 401 (R.I. 2001). The Rhode Island Supreme Court explicitly cautioned zoning boards "to make certain that zoning board decisions on variance applications (whether use or dimensional) address the evidence in the record. . . ." Sciacca, 769 A.2d at 585.
Here, the Board made factual findings and properly considered the Advisory Opinion's conclusion that the lot is too small for the proposed uses. In addition, the Board identified the evidence upon which it relied in reaching its legal conclusions, including but not limited to the fact that the application is not in conformance with the Comprehensive Plan. Further, the Board's findings as to the use variance for parking in the front yard do not fall short of the requirements dictated by the Supreme Court as to require reversal or remand See von Bernuth, 770 A.2d at 401-02. Decisions should "address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Sciacca, 769 A.2d at 585 (board's findings were inadequate where the record "disclosed absolutely no evidence to support the zoning board's decision"). The Board specifically referenced the testimony offered at the hearing and concluded that the "applicant has not successfully established that they will be deprived of all beneficial use of their property if the application is ultimately denied." Since the record reflects that the appellant did not present evidence demonstrating that denial of the requested relief would result in a deprivation of all beneficial use of the parcel and that the requested relief would not comply with the Comprehensive Plan, this Court finds that the Board's denial of the use variance was not clearly erroneous.
The Board also denied the appellant's request for dimensional relief from § 410-44 which dictates front, rear and side yard setbacks, lot frontage and lot size. The Ordinance provides that a petitioner seeking such dimensional variance must show:
 (a) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area and not due to a physical or economic disability of the applicant.
 (b) That said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 (c) That the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this chapter or the Comprehensive Plan of the city.
 (d) That the relief to be granted is the least relief necessary.
 (2) The Board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 (b) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief.
In addition to satisfying sections (a) — (d) enumerated above, at the time of the hearing an applicant seeking a dimensional variance was required to prove "`that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of ones property.'" Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2002) (quoting G.L. § 45-24-41(d)). Under this standard an applicant seeking a dimensional variance bears the burden of proving that "no reasonable alternative" exists. See von Bernuth v. Zoning Bd. of Reviewof the Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). This standard, however, applies only to situations in which dimensional relief is sought for a permitted use. Id. If an applicant seeks both a true variance for a use not permitted in the ordinance and "also seeks relief from area or set back requirements . . . the applicant must meet the `loss of all beneficial use' hardship standard for all aspects of his petition." Roland F. Chase, Rhode Island Zoning Handbook, § 146 (1993). The more-than-a-mere-inconvenience standard "has never been applied as the controlling yard stick where the property owner is seeking both relaxation of the area restrictions as well as a variance or exception for a nonpermitted use." Sun Oil Co. v. Zoning Bd. of Review ofthe City of Warwick, 105 R.I. 231, 234; 251 A.2d 167 (1969); see alsoHealth Havens, Inc. v. Zoning Bd. of Review of the City of EastProvidence, 101 R.I. 258, 262, 221 A.2d 794, 797 (1966). Accordingly, the Board's denial of dimensional relief was not erroneous.
In the present case the record reflects that the parcel at issue is extremely undersized, but the appellant seeks relief from virtually every aspect of the Ordinance's dimensional regulations. Specifically, he requested relief from front, rear and side yard setbacks, lot frontage, and lot size for the purpose of constructing a single-family dwelling. He also requested a use variance for the purpose of constructing a two car parking area in the front yard of the dwelling. While a single-family dwelling is a permitted use in the RM zone where this parcel is located, front yard parking is expressly prohibited. § 410-77.B(1). Furthermore, utilization of the front yard for a parking area would constitute an additional and prohibited use, as § 410-73 of the Ordinance specifies that "[n]o land shall be used and no structure shall be erected or used until off-street parking spaces as required in this chapter are provided with either accessory use or principal use parking facilities. . . ." § 410-73. Consequently, it would have acted in excess of its statutory and ordinance powers if the Board had granted requested relief which is not permissible under the Ordinance. SeeArc-Lan Co. v. Zoning Bd. of Review of the Town of North Providence,261 A.2d 280, 282, 106 R.I. 474, 476 (1970) (". . . [A] zoning board of review may not, either directly or indirectly, act so as to, in effect, amend the provisions of a zoning ordinance[,] and it is without authority to nullify the pertinent provisions of the [zoning] ordinance.") Accordingly, the Board's finding that the proposed use would violate the Comprehensive Plan and its denial of the appellant's request for relief did not violate ordinance or statutory provisions and was not clearly erroneous.
 CONCLUSION
After a review of the entire record, this Court finds that the Board's decision in its entirety is supported by reliable, probative, and substantial evidence in the record, is not in excess of the authority granted to it by statute or ordinance, and is not affected by error of law. The decision is not in violation of constitutional, statutory or ordinance provisions or made upon unlawful procedure, is not arbitrary, capricious, or characterized by an abuse of discretion. Substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed.
[1] Permitted residential uses for this zone are as follows: one-family detached dwelling; two-family detached dwelling; three- or four-family detached dwelling; multifamily (5 dwelling units and over); community residence; convent or rectory; family day-care home; taking of boarders or leasing rooms by a person residing on the premises for not more than 2 boarders.
[2] In pertinent part, the Advisory Opinion reads as follows: "The lot is less than half of the total lot size that the City requires to construct a single-family home. When applicants bought the property 2 ½ years ago, this was not a buildable lot. If a house were to be squeezed on this lot, it is impossible for it to meet the dimensional set backs of the ordinance. We have repeatedly discouraged density increases in appropriate areas. Its incredibly small size, coupled with the fact that it is right along interstate 95 makes this lot completely inappropriate for use as a single-family house lot. This application isNOT in conformance with the City Comprehensive Plan. We recommend denialof the application." (Emphasis in the original.) The appellant's argument — that the Advisory Opinion was not properly before the Board — is without merit. Pursuant to the Ordinance, the City Planning Commission is required to report its findings and recommendations to the Board. § 410-112.
[3] Appellant also makes reference to alleged improper advice of city officials. Specifically, he claims that building officials of the City of Pawtucket had no authority to deny appellant a permit to rebuild the same nonconforming dwelling that existed on the parcel prior to the condemnation. Secondly, he claims that the official erred by telling appellant that a variance was required to build a single-family dwelling. Further, he states that the official erred by advising him of the need for a use variance for front yard parking. Appellant claims that this particular advice was erroneous on two fronts: First he contends that he does not need a variance because the parcel constitutes a legal nonconforming parcel. Secondly, he asserts that the variance should have been for dimensional relief as opposed to change of use. This Court will not address issues which are not in the record below. Nor will the Court reach the alleged erroneous advice of city officials. These arguments were not raised before the Board and the facts relative to these assertions are not in the record. Therefore, the Court cannot consider these matters. G.L. 45-24-69(d). To the extent appellant complains of actions of an enforcement officer, the remedy is an appeal under § 410-115 of the Ordinance subject to the requirements of the Enabling Act.
[4] "B. Paving limitations. Paving on lots in residence zones shall be limited to the following:
 (1) The front yard may only be used for a driveway to access a garage or parking area located in the side or rear yard or a garage beneath the dwelling structure; provided, however, that no parking shall be allowed in the front yard at any time." § 410-77.B(1).